IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 3, 2012 Session

## STATE OF TENNESSEE v. CHRISTINE CAUDLE

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Williamson County**
**No. IICR094394       Timothy L. Easter, Judge**

_____

**No. M2010-01172-SC-R11-CD - Filed November 27, 2012**

_____

The defendant pled guilty to reckless endangerment with a deadly weapon and theft of merchandise over five hundred dollars. The trial court sentenced the defendant as a Range II, multiple offender to three years on each count, to be served concurrently. On appeal, the defendant argued that the trial court erred by failing to apply certain mitigating factors and by failing to grant probation or an alternative sentence. The Court of Criminal Appeals, after declining to review the sentences because the defendant had failed to provide a transcript of the hearing on the guilty pleas, affirmed the judgment of the trial court based upon a presumption that the evidence was sufficient to support the sentences. After granting the defendant's application for permission to appeal because of conflicting opinions by the Court of Criminal Appeals as to whether the absence of a transcript of a guilty plea submission hearing precludes appellate review on the merits, we ordered that the record be supplemented. In this instance, the record was adequate for a meaningful review of the sentences either with or without the transcript of the hearing on the guilty pleas. By use of the recently adopted abuse of discretion standard for the review of sentences, we affirm the judgment of the trial court.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal**
**Appeals Affirmed**

GARY R. WADE, C.J., delivered the opinion of the Court, in which JANICE M. HOLDER, CORNELIA A. CLARK, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Vanessa P. Bryan, District Public Defender, and James L. Elkins, III, Assistant Public Defender, for the appellant, Christine Caudle.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; Benjamin A. Ball, Assistant Attorney General; Kim Helper, District Attorney General; and

Mary Katherine White, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts and Procedural History

On February 8, 2010, Christine Caudle (the "Defendant") entered pleas of guilt to reckless endangerment with a deadly weapon, see Tenn. Code Ann. § 39-13-103 (2010), and theft of merchandise over five hundred dollars, see id. § 39-14-146, both of which are Class E felonies. At the plea submission hearing, the Defendant acknowledged that she understood her rights as recited by the trial court and that her pleas of guilt were knowingly and voluntarily made. The trial court informed the Defendant of the requisite elements on each count and addressed each of the documents that the Defendant had signed in accordance with her pleas, including a stipulation as to the factual basis of her plea agreement.[1] The Defendant stipulated that she qualified as a Range II, multiple offender and that the sentences for each crime would be served concurrently. After informing the Defendant that she faced a potential sentence of between two and four years and a potential fine of up to three thousand dollars on each count, the trial court approved the pleas of guilt.

At the sentencing hearing several weeks later, the facts were fully developed. Tracy Mavity, a loss prevention employee at JCPenney, testified that on December 17, 2008, she observed the Defendant and another woman concealing store merchandise. When she confronted the two women as they left the store, the Defendant attacked her, pulling her hair and dragging her towards a vehicle parked near the entrance, where a male driver was waiting for the Defendant and her female accomplice. Mavity testified that the Defendant pulled her by her hair partially into the vehicle, and, while the lower half of Mavity's body was still outside, the Defendant directed the driver to "gun it." Mavity, who was dragged "[s]omewhere around 500 feet" before being thrown out of the vehicle, broke her right arm, right knee, and little finger, and suffered injuries to her left shoulder. While acknowledging that she was terminated by JCPenney on grounds of insubordination one year after the incident, Mavity claimed that she actually was discharged because she continued to be treated for emotional distress related to the attack.

Samuel L. Anderson, the Defendant's pastor, testified that even though the Defendant

---

[1] During the submission hearing the trial court provided the following admonition:

Before you can be convicted, the State would have to prove beyond a reasonable doubt that . . . you removed, took possession [of,] or caused to be removed some store merchandise, [and] that the value was over $500 . . . . You did not have permission or consent to remove their property, and you had the intent to deprive [JCPenney] of their merchandise.

had been in some trouble during her teenage years, he had "seen a tremendous change" during the year he had come to know her, and she was a "complete[ly] different person." He pointed out that the Defendant had brought her children and other young people into his church, and he expressed the belief that she was a good candidate for probation. On cross-examination by the State, Pastor Anderson acknowledged that he did not know the Defendant had prior criminal convictions and had previously used illegal drugs, although he had heard "rumor[s] around . . . the community" to that effect.

Yolanda Foster, a long-time friend of the Defendant, also testified on her behalf. According to Foster, the Defendant had "changed dramatically" since the JCPenney incident because "she stopped drinking [and] she started going to church on a regular basis." Foster testified that the Defendant was working and attending school full-time, and that she had "become a different person, like, completely all around . . . in this past year." Foster further testified that the Defendant had "removed all the negative people out of her life" and that she lived "strictly for her kids and God now." On cross-examination, Foster speculated that the other female shoplifter may have attacked the victim because the Defendant had "never been like the leader type of a group."

Kimberly Williams, whose brother had fathered three of the Defendant's five children, testified that she attended Brown Mackie College with the Defendant and worked and went to church with her. She also expressed the belief that the Defendant should be granted probation. On cross-examination, however, she acknowledged that the Defendant "ha[d] been given opportunity after opportunity" on her prior offenses and had "been given probation over, and over, and over again."

The Defendant, who was twenty-six years old and had five children, admitted to several prior convictions, one of which resulted in a nine-month jail sentence. She acknowledged that she had "jumped bail," failed drug tests, and committed additional offenses while on probation. She blamed her prior criminal history on bad choices she had made by "hanging around the wrong crowd [and] doing things that [she] thought would make [her] look better and cooler." According to the Defendant, she had separated herself from those negative influences, stopped using drugs, and enrolled in college in pursuit of a degree in the medical field. She stated that she planned to obtain additional training to become a counselor for young girls who had experiences similar to her own. The Defendant, who was on probation at the time of her offenses at JCPenney, admitted that she had entered the store with the intention of stealing merchandise, but claimed she did not leave with any stolen items. She denied that she had pulled the victim's hair and dragged her into the getaway car, claiming that her accomplice, Janetta Hill, had done so. Although the Defendant claimed to have given the name of her female accomplice at the time of her arrest, she could not explain why the police did not list either of her accomplices in the indictment. While admitting that

she had violated the conditions of her probation for several of her prior crimes, she promised to comply with the trial court's directives if granted probation for the JCPenney crimes.

At the conclusion of proof at the sentencing hearing, the trial court found that the Defendant's testimony lacked credibility and considered four statutory enhancement factors: (1) "The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range," Tenn. Code Ann. § 40-35-114(1); (2) "The personal injuries inflicted upon, or the amount of damage to property sustained by or taken from, the victim was particularly great," id. § 40-35-114(6); (3) "The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community," id. § 40-35-114(8); and (4) "At the time the felony was committed, . . . the defendant[ was] . . . [r]eleased on probation," id. § 40-35-114(13)(C). The trial court also applied one mitigating factor, finding that the Defendant appeared to be turning her life in the right direction by attending school and maintaining employment. See id. § 40-35-113(13). After considering these factors, the Defendant's pre-sentence report, the testimony from the sentencing hearing, the nature and characteristics of the Defendant's conduct, and the statutory purposes and principles of sentencing, the trial court imposed concurrent sentences of three years for each conviction. Although the trial court initially considered the Defendant to be a favorable candidate for alternative sentencing, see id. § 40-35-102(6)(A), after reviewing the Defendant's extensive criminal record, the relative leniency she had received in prior cases, and her "outrageous conduct" during the JCPenney crimes, the court denied probation and ordered that the sentences be served in confinement. The trial court further ruled that confinement was necessary to avoid depreciating the seriousness of the offenses. See id. § 40-35-103(1)(B).

On appeal, the Defendant contended that the trial court had erred by failing to properly consider other applicable mitigating factors and by failing to grant probation or an alternative sentence. Because the Defendant had failed to include in the appellate record a transcript of the hearing on her guilty pleas, the Court of Criminal Appeals determined that it could not conduct a full de novo review of the sentences, presumed that the judgment was supported by sufficient evidence, and affirmed the sentences.

## II. Analysis

In her application for permission to appeal to this Court, the Defendant contended that the record was sufficient for appellate review notwithstanding the absence of the transcript of the plea submission hearing. We granted the application in order to address conflicting opinions by our Court of Criminal Appeals as to whether the failure to include in the record a transcript of the hearing on a guilty plea precludes de novo review of a sentence. While conceding that the Court of Criminal Appeals erred by failing to conduct a de novo review, the State argues for the adoption of a rule providing for such review, but accompanied by a

presumption that the absent transcript supports the trial court's decision. After granting the Defendant's application, we directed the clerk of the trial court to supplement the record with the transcript of the hearing on the guilty pleas. See Tenn. R. App. P. 24(e).

It is, of course, the duty of an appellant to provide a record that conveys a fair, accurate, and complete account of what transpired regarding the issues forming the basis for the appeal. Tenn. R. App. P. 24(b); State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999). There is disagreement within the Court of Criminal Appeals as to whether a defendant's failure to include the transcript of a guilty plea hearing invokes a presumption that the sentence imposed by the trial court is correct. The Court of Criminal Appeals recently acknowledged this disagreement in State v. Steward, No. E2010-01918-CCA-R3-CD, 2011 WL 4346659, at *2 (Tenn. Crim. App. Sept. 19, 2011), identifying the fundamental issue to be resolved as whether "the plea hearing transcript [is] always required before the appellate court can review a sentencing issue on the merits." Id. at *3. After listing prior opinions in which the Court of Criminal Appeals had reviewed a sentence without a transcript of the submission hearing, the majority in Steward determined that the absence of the transcript would not preclude consideration of the issue on appeal if the record otherwise afforded an adequate basis for review. Id. at *4-5. The Steward majority also observed that our sentencing statutes did not include "a per se requirement that the plea submission hearing transcript be included in the record as a condition precedent to appellate review." Id. at *3. The concurring opinion in Steward pointed out that "the guilty plea hearing transcript [was] vital to a de novo review," and warned that "[n]o matter how developed a record may appear, we will never know the full extent unless the guilty plea transcript is included." Id. at *6 (Tipton, P.J., concurring).

In the case before us, a panel majority of the Court of Criminal Appeals followed the analysis of the concurring opinion in Steward, holding that because de novo review under Tennessee's Criminal Sentencing Reform Act of 1989 requires consideration of any evidence received at the trial and the sentencing hearing, see Tenn. Code Ann. § 40-35-210(b)(1), and the Defendant's guilty plea hearing was the equivalent of trial, see State v. Keen, 996 S.W.2d 842, 843 (Tenn. Crim. App. 1999), the absence of the plea hearing transcript necessarily resulted in an inadequate record. State v. Caudle, No. M2010-01172-CCA-R3-CD, 2011 WL 6152286, at *4 (Tenn. Crim. App. Dec. 8, 2011). Because the Defendant failed to include a transcript of the guilty plea hearing in the record on appeal, the majority held that it was precluded from "a de novo review of her sentences and [was] require[d] . . . to presume that the evidence supported the sentences." Id. The concurring opinion rejected a "bright-line rule against a review on the merits" in favor of the Steward majority's "case-by-case approach," concluded that the record was sufficient for meaningful review, and yet agreed that the sentences should be affirmed. Id. at *5 (Bivins, J., concurring).

Our recent decision in State v. Bise, No. E2011-00005-SC-R11-CD, 2012 WL 4380564, __ S.W.3d __ (Tenn. Sept. 26, 2012), provides guidance as to the standard of review under circumstances such as these. As addressed at length in Bise, our General Assembly adopted the 2005 amendments to the Sentencing Reform Act of 1989 in order to bring our sentencing statutes into compliance with several United States Supreme Court rulings finding constitutional fault in a variety of mandatory sentencing schemes. Id. at *8-10. The amendments changed the method of fixing the length of a sentence within the appropriate range by "remov[ing] the prior rule, that absent an enhancement [factor], a judge may not impose a sentence that exceeds the presumptive sentence" and instead allowing "the judge [to] sentence anywhere within the appropriate range." David L. Raybin, The *Blakely* Fix: New Tennessee Law Restores Judicial Discretion in Criminal Sentencing, 41 Tenn. B.J. 14, 16 (2005) [hereinafter Raybin, 41 Tenn. B.J.]. As a result, we held in Bise that the 2005 amendments "effectively abrogated the de novo standard of appellate review," and we adopted, in its place, "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." 2012 WL 4380564, at *17. The facts in Bise, however, were limited to appellate review of the length of the sentence imposed by the trial court. We did not address whether the newly adopted abuse of discretion standard should also be applied to a trial court's grant or denial of either probation or some other form of an alternative sentence.

The answer lies within a provision of the 2005 amendments addressing alternative sentencing and probation eligibility, which is almost identical to the provisions at issue in Bise. Specifically, Tennessee Code Annotated section 40-35-102(6) (2003) was rewritten in its entirety. Raybin, 41 Tenn. B.J. at 20; see Act of June 7, 2005, ch. 353, 2005 Tenn. Pub. Acts 788 (codified at Tenn. Code Ann. § 40-35-102(6) (2006)). Our General Assembly removed the original language creating a "presumption" that certain defendants qualified as favorable candidates for alternative sentencing and adopted a merely advisory "consideration" of whether a particular defendant could be viewed as a favorable candidate for alternative sentencing. Raybin, 41 Tenn. B.J. at 21; see Tenn. Code Ann. § 40-35-102(6) (2006). In addition, the amendment to section 40-35-102(6) (2003) provided that "[a] court shall consider, but is not bound by, this advisory sentencing guideline." Tenn. Code Ann. § 40-35-102(6) (2006). One authority observed that "[t]his formulation is identical to the advisory sentencing guideline that mandates consideration of the minimum sentence without the corresponding 'presumption.'" Raybin, 41 Tenn. B.J. at 21. Moreover, Tennessee Code Annotated section 40-35-401(d) (2010), which retained a de novo standard of review, directs the appellate courts to address sentencing issues, "including the granting or denial of probation and the length of sentence," pursuant to the same standard. In Bise, of course, we adopted an abuse of discretion standard in place of de novo review as to the length of the sentence. 2012 WL 4380564, at *17. Since our ruling in Bise, our Court of Criminal

Appeals has also reviewed the manner of service of a sentence under the abuse of discretion standard. See, e.g., State v. Hawkins, No. M2011-00531-CCA-R3-CD, 2012 WL 5187935, at *15 (Tenn. Crim. App. Oct. 17, 2012) (applying the Bise standard to review denial of probation); State v. Sanders, No. M2011-00962-CCA-R3-CD, 2012 WL 4841545, at *15 (Tenn. Crim. App. Oct. 9, 2012) ("When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness."). For all of these reasons, we now explicitly hold that the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence. As stated in Bise, "when the 2005 amendments vested the trial court with broad discretionary authority in the imposition of sentences, de novo appellate review and the 'presumption of correctness' ceased to be relevant." 2012 WL 4380564, at *19.

We further hold that when a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review under the standard adopted in Bise. In our view, the case-by-case approach is preferable for several reasons. First, as noted in Bise, the key to meaningful appellate review under the abuse of discretion standard is whether the trial court recites a proper basis for the sentence. 2012 WL 4380564, at *16 & n.41. Second, the pre-sentence report and the transcript of the sentencing hearing may often be the only sources of the trial court's bases for the sentence in the absence of a verbatim recitation of the facts at the hearing on a guilty plea.[2] Third, it is the duty of an appellant under Tennessee Rule of Appellate Procedure 24(b) only to prepare a record as necessary to convey the issues on appeal. Finally, while we are mindful of the duty of an appellant to provide a fair, accurate, and complete record on appeal, an order of supplementation, as we have required in this case, may be an appropriate remedy for any deficiencies in the record.

While appellate courts have the authority to supplement a record when necessary, Tenn. R. App. P. 24(e), we do not mean to suggest that the Court of Criminal Appeals must or should order supplementation of the record in every case where the appellant fails to provide a transcript of the hearing on a guilty plea. Supplementation may be considered on

---

[2] Tennessee Rule of Criminal Procedure 11(b)(3) states, "Before entering judgment on a guilty plea, the court shall determine that there is a factual basis for the plea." In some cases, however, the defendant may stipulate to a factual basis or enter a "best interest" plea of guilt after the trial has begun; in these situations, the facts upon which the conviction is based are not recited at the plea submission hearing, and, therefore, a transcript of the hearing will likely be of little use to the appellate courts in reviewing a sentencing issue.

a case-by-case basis and should be ordered only if the record is otherwise inadequate to conduct a meaningful appellate review on the merits of the sentencing decision. If, however, the record is adequate for a meaningful review, the appellate court may review the merits of the sentencing decision with a presumption that the missing transcript would support the ruling of the trial court. See State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). In any event, the mere fact that the transcript of the submission hearing was not made a part of the record on appeal should not preclude review under the standard adopted in Bise.

Applying these principles to the case before us, our assessment is that the pre-sentence report, the transcript of the sentencing hearing, and the exhibits in the record are more than adequate to conduct a meaningful appellate review. Moreover, the transcript of the guilty plea hearing, provided in response to our order to supplement the record, establishes that because the Defendant stipulated to the facts upon which the pleas were based, the supplement does not add anything of consequence to the original record on appeal. While we recognize that in some cases the transcript of the guilty plea hearing may contain additional evidence essential for a meaningful review, that is not the case here.

In the Court of Criminal Appeals, the Defendant challenged the trial court's failure to consider additional mitigating factors and to grant either probation or some other form of an alternative sentence. Clearly, the trial court did not abuse its discretionary authority to impose concurrent, three-year terms and deny probation or any other alternative sentence. The Defendant stipulated that she qualified as a Range II, multiple offender, and there was extensive testimony as to the Defendant's prior criminal history, which also was documented in the pre-sentence report. The Defendant acknowledged that even though she had received probation in the past, she had repeatedly violated the conditions of her probation and continued to commit other crimes. In fact, the Defendant agreed that she was on probation for a prior theft conviction at the time she committed the JCPenney crimes. Moreover, the circumstances of the reckless endangerment offense were egregious. The conduct of the Defendant and her accomplices could have cost the victim her life. The record demonstrates that the trial court carefully considered all of the evidence, the statutory enhancement and mitigating factors, and the purposes and principles of sentencing before ordering the Defendant to serve concurrent, three-year sentences in confinement. The Defendant has, therefore, failed to either establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded sentences which reflect a proper application of the purposes and principles of our statutory scheme.

### III. Conclusion

Although the Court of Criminal Appeals could have conducted a meaningful review of the Defendant's sentences without the transcript of the guilty plea hearing, the Defendant is not entitled to relief. Accordingly, we affirm the judgment of the Court of Criminal

Appeals upholding the sentences imposed by the trial court. Because the Defendant qualifies as indigent, costs are adjudged against the State.

_____
GARY R. WADE, CHIEF JUSTICE