# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs April 9, 2013

## STATE OF TENNESSEE v. VINCENT CLIFTON

**Appeal from the Criminal Court of Shelby County**
**Nos. 11-02971, 11-02972    James C. Beasley, Jr., Judge**

---

**No. W2012-01651-CCA-R3-CD  - Filed May 21, 2013**

---

Vincent Clifton ("the Defendant") pleaded guilty to two counts of aggravated robbery, two counts of aggravated burglary, one count of employing a firearm during a dangerous felony, and one count of possession of a handgun by a convicted felon, with no agreement as to his sentences. After a hearing, the trial court sentenced the Defendant to an effective sentence of thirty-five years. The trial court also ordered the Defendant to serve his thirty-five-year sentence consecutively to a previous sentence. On appeal, the Defendant argues that the trial court erred in sentencing him. After a thorough review of the record and the applicable law, we affirm the judgments of the trial court. We remand the case solely for correction of a clerical error on one of the judgment orders.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments**
**of the Criminal Court Affirmed; Case Remanded**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ, joined.

Kathleen A. Ball (on appeal) and David Stowers (at plea and sentencing hearing), Memphis, Tennessee, for the appellant, Vincent Clifton.

Robert E. Cooper, Jr., Attorney General & Reporter; Sophia S. Lee, Senior Counsel; Amy P. Weirich, District Attorney General; and Jose Leon, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

A Shelby County Grand Jury indicted the Defendant and Marcus Readus ("the co-defendant") in case no. 11-02971 on one count of aggravated robbery and one count of

aggravated burglary ("Case One"). Those charges arose out of an incident which occurred on February 16, 2010, involving victim Evelyn Rogers. A Shelby County Grand Jury indicted the Defendant and co-defendant in case no. 11-02972 on one count of aggravated robbery and one count of aggravated burglary, and it also indicted the Defendant on one count of employing a firearm during a dangerous felony and one count of possession of a handgun by a convicted felon in that case ("Case Two"). Those charges arose out of an incident which occurred on February 19, 2010, involving victim Cydney Mosteller. These two indictments were joined by the State in the trial court to be tried jointly. The Defendant pleaded guilty to the indicted offenses, as charged, in April 2012, leaving the sentence on each conviction to be determined by the trial court.

At the sentencing hearing, the presentence report was admitted as an exhibit without objection. Mosteller's victim impact statement also was admitted without objection.

Belinda Brooks, the Defendant's grandmother, testified that the Defendant previously lived with her from the age of nine months until he was approximately twelve years old. She was given custody of the Defendant by his mother "so she could go into the military."

According to Brooks, during the time that the Defendant lived with her, sometimes his behavior was bad, and sometimes his behavior was really good. Because of his behavior, he started to visit a psychologist, Dr. Fournier, beginning at age five. She stated that the Defendant was diagnosed with "ADD and oppositional defiant [sic] and something, it was three different things that he was diagnosed with." She agreed that each diagnosis was related to behavioral problems.

Brooks testified that the Defendant's aunt and cousin "came into his life" when he was either thirteen or fourteen years old. She asked her daughter not to let the Defendant visit with them because she "heard a lot of things that they was doing and when . . . he started seeing them, I think he got really influenced by what they was doing." She agreed that his delinquent adjudications coincided with his aunt's and cousin's appearance in his life.

On cross-examination, Brooks acknowledged that she was not aware that the Defendant previously had been convicted of especially aggravated robbery, aggravated robbery, and aggravated burglary. She learned about the incidents in Case One and Case Two when the Defendant was arrested.

The Defendant testified on his behalf. With regard to Case Two involving victim Mosteller, he stated,

[W]e went to the house. My co-defendant said he know [sic] who lives there and we get to the house and he said, it's a robbery and we went inside the house, or whatever, and next thing we know the police surrounds the house.

The Defendant also stated, "[T]hey say a robbery took place, but a robbery never did take place." The Defendant added that the co-defendant exited the house first, and the Defendant followed him. The Defendant was arrested at the scene and later gave a statement to police about his involvement in both Case One and Case Two.

The Defendant stated that he began "getting in trouble" in 1998 when he was twelve years old. He no longer lived with his grandmother at that time and, instead, lived with his mother. Additionally, at that time he started "hanging out" with his aunt and his cousin, and he agreed that that was when he began getting into trouble. He stated that he had been to juvenile court approximately "thirty something times." The Defendant denied that he had any juvenile convictions for robbery. He agreed, however, that he was arrested for robbery as a juvenile but stated that it was dismissed and that he instead was convicted of theft of property and aggravated assault.

The Defendant stated that, if the victims were present, he would "basically tell them that I'm sorry for what happened. That I really just didn't mean for none of this to happened [sic] like that, you know. If I could take it back, I would." He also testified that he told a detective where the property stolen during the first robbery and burglary was located. He testified that he also went with the police to the location to retrieve the stolen property. He denied that he previously had committed offenses with the co-defendant and stated that these two incidents were the first.

Defense counsel asked the Defendant how he "plans on fixing [him]self[.]" The Defendant responded that he intended to enroll "into some programs, or whatever, just try[] to better [him]self." He also testified that he had been in jail for two and a half years and that he was twenty-three years old at the time of the sentencing hearing. He agreed that since he had been incarcerated for these offenses, he had had "some trouble" in jail. He stated that, upon his release from confinement, "I've got to straighten up." He also agreed that since he was twelve years old he had "kind of been in trouble with the law" but that he was "tired of it[.]"

On cross-examination, the State asked the Defendant what happened at Mosteller's residence because he stated earlier in his testimony that a robbery did not take place. The Defendant responded, "[W]hen we went inside the house where the robbery was occurring, but the gun, or nothing – didn't nothing ever get took or nothing, you know, the gun never got pulled up." He agreed, however, that nothing was taken because the police were dispatched to the residence while he and the co-defendant were still inside.

He also acknowledged that the first offense he committed as a juvenile was arson. He stated that he "set some tissue on fire in the bathroom" of a Rite-Aid because he "was just young and just doing something." He further acknowledged that the first offense he committed as an adult offender was aggravated burglary. He stated that he was charged with aggravated burglary because he entered a vacant house in order to "get high."

While in jail for the past two and a half years, the Defendant stated that he was in "anger management, M.I.T. program" but that he did not finish it. He disagreed that he "picked two elderly women to go rob" because he thought they would be "more vulnerable" or would be "an easier target[.]" He also claimed that he and the co-defendant did not know that Mosteller "would be . . . that old." Lastly, he disagreed that he duct taped either of the victims named in the indictment.

At the conclusion of the sentencing hearing, the trial court reviewed the purposes of sentencing codified at Tennessee Code Annotated section 40-35-102 and the sentencing considerations codified at Tennessee Code Annotated section 40-35-103. The trial court then stated that it also reviewed the presentence report and found that the Defendant was a range II offender for purposes of sentencing.

The trial court found the following enhancement factors applicable to both Case One and Case Two: (1) the Defendant "has a previous history of criminal convictions [and] criminal behavior, in addition to those necessary to establish [his Range II status];" (2) the Defendant "was a leader in the commission of an offense involving two (2) or more criminal actors;" (3) the victims were "particularly vulnerable because of age or physical or mental disability;" (4) the Defendant, "before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community," noting specifically that the Defendant was placed on six years' probation in October 2009; (5) that at the time that the felony was committed, the Defendant was released on probation or parole; and (6) the Defendant "was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult." See Tenn. Code Ann. § 40-35-114 (Supp. 2007). The trial court also found as an additional enhancement factor relevant to Case One that "the offense involved more than one (1) victim[.]" Id.

In weighing the enhancement factors, the trial court stated that it would "put a great deal of emphasis" on the fact that the Defendant committed the offenses in these cases less than four months after being placed on six years' probation in a different case. With regard to the enhancement factor that a victim of the offense was particularly vulnerable because of age or physical or mental disability, in Case One, the court stated that it was "not sure [it] will put much weight on" that enhancement factor and in Case Two, the trial court stated that it did not "really have anything in front of [it] other than the statement of counsel that would give [it] reason to find that that is an enhancement factor for the [c]ourt to consider.

-4-

So, [it] won't give that any weight, or at least minimal weight."  In its written findings of fact, the trial court specifically noted that it gave this enhancement factor no weight in Case Two.

In terms of mitigating factors, the court stated that it did not find that the Defendant "was suffering from a mental or physical condition that significantly reduced [his] culpability for the offense[s.]"  See Tenn. Code Ann. § 40-35-113 (2006).  The trial court found, however, the following two mitigating factors: (1) that the Defendant "assisted the authorities in uncovering offenses committed by other persons or assisted in detecting or apprehending other persons who had committed the offenses;" and (2) the Defendant "assisted the authorities in locating or recovering any property or person involved in the crime[.]"  See id.

In Case One, the trial court sentenced the Defendant as a Range II offender to fifteen years on count one, aggravated robbery, and to eight years on count two, aggravated burglary. In Case Two, the trial court sentenced the Defendant as Range II offender to fifteen years on count one, aggravated robbery; ten years on count two, aggravated burglary; and to four years on count four,  possession of a handgun by a convicted felon.  The trial court sentenced the Defendant as a violent offender to ten years at 100% on count three, employing a firearm during the commission of a dangerous felony, to wit: aggravated burglary.[1]

The trial court also stated that, based upon the Defendant's history and the testimony presented at the hearing, it found that the Defendant "is a dangerous offender[] whose behavior indicates little or no regard for human life."  It also found that he had "no hesitation about committing a crime in which the risk to human life [was] high" and that the circumstances surrounding the commission of the offenses were "aggravated."  The court stated that confinement for an extended period of time was necessary to protect society from the Defendant's unwillingness to lead a productive life.  The trial court additionally noted the "[D]efendant's resort to criminal activity and furtherance of an anti-societal life style." In this regard, the trial court also stated, "It's very unfortunate that at the age of twenty-three, we already have a very clear picture being painted of this young man's life and the direction he has chosen and the direction he is headed."  Lastly, the trial court found "the aggregate [length of] the sentences reasonably relates to the offense[s] for which the [D]efendant stands convicted."  The trial court also noted, at the hearing and in its written findings of fact, that the Defendant was being sentenced for offenses committed while released on probation.

_____

[1] At the sentencing hearing the trial court stated that the Defendant was being sentenced as a violent offender to ten years' incarceration at 100%.  However, no statutory provision mandates that the Defendant be sentenced at 100% for this offense.  We note that this misstatement is of no consequence because the judgment of conviction entered for this conviction indicates the correct offender status and release eligibility: multiple offender at 35%.

Accordingly, the trial court ordered that both counts in Case One run concurrently to one another for an effective sentence of fifteen years but consecutively to Case Two and consecutively to a prior sentence imposed in case no. 07-05785 ("Prior Case"). In Case Two, the court ordered that counts two and three be served consecutively to one another but concurrently to counts one and four for an effective sentence of twenty years. The trial court also ordered that the twenty-year sentence in Case Two be served consecutively to the fifteen-year sentence in Case One, for a total effective sentence of thirty-five years, and that the thirty-five year sentence be served consecutively to the Prior Case.

The Defendant timely appealed, challenging his sentence.

## Analysis

### Omission of Guilty Plea Transcript

We first note that the Defendant failed to include a transcript of the guilty plea hearing in the appellate record. It is the Defendant's duty to compile a complete record for appeal. See Tenn. R. App. P. 24(b). The State contends that because the record does not include a transcript of the guilty plea hearing, "the trial court's sentencing decision should be presumed correct." In State v. Caudle, 388 S.W.3d 273 (Tenn. 2012), our supreme court recently held that "when a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review of the defendant's sentence under the standard adopted in Bise." Id. at 279. The court also held that "the mere fact that the transcript of the submission hearing was not made a part of the record on appeal should not preclude review under the standard adopted in Bise." Id. In reaching this conclusion, the court stated that this Court has the authority to supplement a record when necessary pursuant to Tennessee Rule of Appellate Procedure 24(e). Id. The court, however, noted that we are not required to "order supplementation of the record in every case where the appellant fails to provide a transcript of the hearing on a guilty plea." Id. Instead, supplementation should be considered on a case-by-case basis and "should be ordered only if the record is otherwise inadequate to conduct a meaningful appellate review on the merits of the sentencing decision." Id. Lastly, the court held that if "the record is adequate for a meaningful review, the appellate court may review the merits of the sentencing decision with a presumption that the missing transcript would support the ruling of the trial court." Id.

While inclusion of the guilty plea transcript is preferred, based upon the specific facts of this case, we conclude that the record is adequate to afford appellate review of the Defendant's sentence without supplementation of the guilty plea transcript.

**Sentencing**

The Defendant has challenged his sentence, contending that the trial court failed to consider the mitigating factor relating to the Defendant's mental health issues, misapplied the enhancement factor that the Defendant was a leader in the commission of the offenses, and erred in imposing consecutive sentencing.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). "[A] trial court's misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from its sentencing decision." Id. at 709. This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Id. at 709-10. Moreover, under those circumstances, we may not disturb the sentence even if we had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). The party appealing the sentence has the burden of demonstrating its impropriety. Tenn. Code Ann. § 40-35-401, Sent'g Comm'n Cmts.; see also State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991)

Prior to imposing a sentence, a trial court is required to consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in [Tennessee Code Annotated sections ] 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b) (2006).

The referenced "principles of sentencing" include the following: "the imposition of a sentence justly deserved in relation to the seriousness of the offense" and "[e]ncouraging effective rehabilitation of those defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs." Tenn. Code Ann. § 40-35-102(1), (3)(C) (Supp. 2007). "The sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Id. § 40-35-103(4), (5) (2006).

Our Sentencing Act also mandates as follows:

In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in [Tennessee Code Annotated sections] 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Additionally, a sentence including confinement should be based on the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann.§ 40-35-103(1).

The Defendant pleaded guilty to two counts of aggravated robbery, Class B felonies;[2] two counts of aggravated burglary, Class C felonies;[3] one count of employing a firearm during a dangerous felony, a Class C felony;[4] and one count of possession of a handgun by a convicted felon, a Class E felony.[5] The Range II sentence for a Class B felony is twelve to twenty years; the Range II sentence for a Class C felony is six to ten years; and the Range II sentence for a Class E felony is two to four years. See Tenn. Code Ann. § 40-35-112 (2006). The trial court sentenced the Defendant to fifteen years on each aggravated robbery conviction, to eight years on his aggravated burglary conviction in Case One, to ten years on his aggravated burglary conviction in Case Two, to ten years on his employing a firearm during a dangerous felony conviction, and to four years on his possession of a handgun by a convicted felon conviction. Each sentence is within the authorized term for the respective class.

We initially note that the trial court was required to sentence the Defendant to ten years' incarceration for his employing a firearm during a dangerous felony conviction. See Tenn. Code Ann. § 39-17-1324(h)(2) ("A violation of subsection (b) is a Class C felony, punishable by a mandatory minimum ten-year sentence to the department of correction, if the defendant, at the time of the offense, had a prior felony conviction."). As discussed below, the Defendant had numerous felony convictions at the time he committed this offense. Moreover, the trial court also was required to order that this ten-year sentence run consecutively to the underlying "dangerous felony" in Case Two, aggravated burglary,[6] and that it also run consecutively to the Prior Case, which the trial court ordered. See id. § -1324(e)(1) ("A sentence imposed for a violation of subsection (a) or (b) shall be served consecutive to any other sentence the person is serving at the time of the offense or is sentenced to serve for conviction of the underlying dangerous felony."). Accordingly, we need not address the applicability of enhancement or mitigating factors to this conviction nor the consecutive nature of this ten-year sentence to the underlying aggravated burglary conviction in Case Two or the Prior Case.

---

[2] See Tenn. Code Ann. § 39-13-402(b) (2006).

[3] See Tenn. Code Ann. § 39-14-403(b) (2006).

[4] See Tenn. Code Ann. § 39-17-1324(h)(2) (Supp. 2007).

[5] See Tenn. Code Ann. § 39-17-1307(c)(2) (Supp. 2007).

[6] Pursuant to Tennessee Code Annotated section 39-17-1324(i)(1), the underlying "dangerous felony" in Case Two was the Defendant's aggravated burglary conviction. See Tenn. Code Ann. § 39-17-1324(i)(1) ("Dangerous felony means: . . . (H) Aggravated burglary, as defined in § 39-13-403.").

## 1. Mitigating Factors

With respect to the remaining convictions, the trial court found that the following mitigating factors were applicable to each conviction: the Defendant "assisted the authorities in uncovering offenses committed by other persons or in detecting or apprehending other persons who had committed the offenses;" and the Defendant "assisted the authorities in locating or recovering any property or person involved in the crime." See Tenn. Code Ann. § 40-35-113(9), (10). The record supports the application of these mitigating factors.

The trial court explicitly rejected mitigating factor eight, that the Defendant "was suffering from a mental or physical condition that significantly reduced the [D]efendant's culpability for the offense[.]" Tenn. Code Ann. § 40-35-113(8). This Court has stated that "while Tennessee Code Annotated section 40-35-113(8) allows a court to consider any mental condition that significantly reduced the [defendant's] culpability, the [defendant] must sufficiently establish not only the presence of a defect, but also a causal link between his ailment and the offense charged." State v. Robert James Yoreck, III, No. M2004-01289-CCA-R3-CD, 2003 WL 23613823, at *3-4 (Tenn. Crim. App. June 29, 2004), perm. app. denied (Tenn. 2005); see also State v. Donald E. Fentress, No. M2011-01505-CCA-R3-CD, 2012 WL 5439027, at *4 (Tenn. Crim. App. Nov. 7, 2012) (holding that the trial court did not abuse its discretion in rejecting this mitigating factor because the defendant's psychological report did not state that the defendant's culpability was diminished at the time of the crime and it did not provide "evidence of a causal link between his condition and the offense charged"). According to the presentence report, the Defendant stated that he had been diagnosed with Attention Deficit Hyperactivity Disorder and depression. The State of Tennessee Department of Mental Health and Developmental Disabilities' medical record from May 2005, which was attached to the presentence report, reflects that the Defendant was diagnosed with "Depressive Disorder" and "Conduct Disorder, adolescent onset." While the Defendant argues in favor of this mitigation factor, he failed to offer any proof at the sentencing hearing that created a "causal link" between his diagnoses and the offenses in these cases. In fact, the Defendant failed to introduce any evidence that either of these diagnoses could have remotely reduced his culpability. Thus, the trial court did not abuse its discretion by refusing to apply this mitigating factor.

## 2. Enhancement factors

Regarding the Defendant's convictions in Case One and Case Two, other than the employing a firearm during a dangerous felony conviction (previously discussed), the trial court found the following enhancement factors applicable: "(1) [t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;" "(2) [t]he defendant was a leader in the commission of an offense involving two (2) or more criminal actors;" "(4) [a] victim of the offense was

particularly vulnerable because of age or physical or mental disability;" "(8) the defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release in the community;" "(13) [a]t the time that the felony was committed, . . . the defendant[] . . . [was] (B) [r]eleased on parole; [or] (C) [r]eleased on probation;" and "(16) [t]he [d]efendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed as an adult[.]" See Tenn. Code Ann. § 40-35-114 (1), (2), (4), (8), (13)(B)-(C), (16).

The trial court specifically noted that the Defendant was placed on six years' probation in October 2009, just four months prior to the commission of the offenses in both of these cases. Moreover, the trial court also found that the Defendant committed at least two delinquent acts as a juvenile that would constitute a felony if committed as an adult. In Case One, the trial court found applicable the following additional enhancement factor: "(3) [t]he offense involved more than one (1) victim[.]" See Id. § -114(3). The trial court placed "a great deal of emphasis" on the fact that the Defendant committed the offenses in Case One and Case Two less than four months after being placed on probation for separate convictions. On the other hand, the trial court's written findings of fact in Case Two specifically noted that it placed no weight on the enhancement factor that the victim was particularly vulnerable. Thus, we need not consider the applicability of this enhancement factor to Case Two because the trial court ultimately placed no weight on it in sentencing the Defendant.

First, the record clearly establishes that the Defendant "has a previous history of criminal convictions [and] criminal behavior, in addition to those necessary to establish [his Range II offender status.]" See Tenn. Code Ann. § 40-35-114(1). The presentence report reflects that the Defendant has at least one felony conviction and two misdemeanor convictions in addition to the two felony convictions used to establish his range. The Defendant also agreed at the hearing that since being incarcerated he had "had some trouble" in jail. According to his presentence report, he has had "disciplinary reports" for theft, refusing to "lock-down," assaulting an inmate, disrespecting staff, and making a threat to a staff member since he has been incarcerated for these offenses. The presentence report also reflects that the Defendant has a history of illegal drug use. Second, the record establishes that the Defendant "was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult." See id. § -114(16). For instance, the Defendant testified at the hearing that he was adjudicated to have committed arson and aggravated assault as a juvenile.

The record also supports the trial court's application of enhancement factor eight, that the Defendant, before sentencing, "failed to comply with the conditions of a sentence involving release in the community," see Tenn. Code Ann. § 40-35-114(8), and enhancement factor thirteen, that at the time that the felony offenses in this case were committed, the Defendant was released on probation, see id. § -114(13)(A)(3). The presentence report

reflects that the Defendant was placed on six years' probation in October 2009 for a kidnapping and robbery conviction, and he committed the offenses in these cases in February 2010.

Additionally, the trial court applied enhancement factors three and four in Case One, that there was more than one victim and that the victim was particularly vulnerable. Tenn. Code Ann. §§ 40-35-114(3) and (4). The Defendant does not challenge the trial court's applicability of these two enhancement factors. Moreover, at the beginning of the sentencing hearing, the State, upon request by the trial court, recited the factual basis for the Defendant's guilty pleas. The recitation of the facts indicated that two victims were present during the robbery and burglary in Case One and that one of those victims was "particularly vulnerable." In addition to Rogers, who was named in that indictment, her "handicapped daughter" was also inside the home. The presence of two victims also is supported by the Defendant's testimony that he told the detectives where the property was located that he and the co-defendant took during the first robbery and burglary and that "the detective went and got it and gave it back to the *victims*." (Emphasis added).

The Defendant, however, specifically challenges the trial court's application of the enhancement factor that he was a leader in the commission of the offenses in Case One and Case Two. While the record before us does not include the proof upon which the trial court relied in applying this factor, we could presume that the missing guilty plea transcript would support application of this factor. See Caudle, 388 S.W.3d at 279 (holding that if "the record is adequate for a meaningful review, the appellate court may review the merits of the sentencing decision with a presumption that the missing transcript would support the ruling of the trial court"). Nevertheless, even if the trial court should not have applied this factor, that fact does not rebut the presumption of reasonableness as to the sentences given by the trial court. See Bise, 380 S.W.3d at 709 ("[A] trial court's misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from its sentencing decision."). The trial court imposed the sentence lengths in a manner consistent with the purposes, principles, and goals of the Sentencing Act, and the presence of multiple enhancement factors supported by the record render the Defendant's contention without merit.

### 3. Consecutive Sentencing

The Defendant also contends that the trial court erred in imposing consecutive sentences. Tennessee Code Annotated section 40-35-115 (2006) provides, in pertinent part, that a trial court may impose consecutive sentences if it finds by a preponderance of the evidence that one of the following criteria are met: "(4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high; [or] "(6) the defendant is

sentenced for an offense committed while on probation[.]" Tenn. Code Ann. § 40-35-115(b)(4), (6). In addition to these criteria, "consecutive sentencing is guided by the general sentencing principles providing that the length of a sentence be 'justly deserved in relation to the seriousness of the offense' and 'no greater than that deserved for the offense committed,'" although specific factual findings are not necessary. State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002); see also Tenn. Code Ann. §§ 40-35-102(1), -103(2); In re Sneed, 302 S.W.3d 825, 828-29 (Tenn. 2010). We review a trial court's decision to impose consecutive sentences for an abuse of discretion. State v. Adams, 973 S.W.2d 224, 230–31 (Tenn. Crim. App. 1997)).[7]

Initially, as previously discussed, the trial court was required to order that the Defendant's ten-year sentence for employing a firearm during a dangerous felony conviction run consecutively to the underlying "dangerous felony" in Case Two, aggravated burglary, and that it also run consecutively to the Prior Case. See Tenn. Code Ann. § 39-17-1324(e)(1) ("A sentence imposed for a violation of subsection (a) or (b) shall be served consecutive to any other sentence the person is serving at the time of the offense or is sentenced to serve for conviction of the underlying dangerous felony.").

In analyzing whether consecutive sentences were appropriate for the remaining convictions, the trial court found that, pursuant to Tennessee Code Annotated section 40-35-115, the Defendant was a dangerous offender and that the Defendant was being sentenced for offenses committed while on probation. See Tenn. Code Ann. § -115(b)(4), (6). At the sentencing hearing, the trial court found that the Defendant was released on six years' probation in October 2009, just four months prior to committing the offenses in these cases in February 2010. The existence of any one of the seven criteria in Tennessee Code Annotated section 40-35-115(b) is sufficient to justify consecutive sentencing. See, e.g., id.; State v. Alder, 71 S.W.3d 299, 307 (Tenn. Crim. App. 2001). Consequently, we need not address whether the trial court properly determined that the Defendant was a dangerous

---

[7] Our supreme court recently has directed that we review felony sentences imposed pursuant to the 2005 amendments to the 1989 Sentencing Act "under an abuse of discretion standard with a 'presumption of reasonableness.'" Bise, 380 S.W.3d 682, 708 (Tenn. 2012). The effective sentence at issue in Bise was the result of several sentences ordered to be served concurrently. Id. at 687 n. 5. The supreme court has not yet addressed directly what impact, if any, its decision in Bise has on our review of consecutive sentences. However, in State v. Caudle, 388 S.W.3d 273, 278–79 (Tenn. 2012), in which the supreme court expressly extended the Bise standard of review to questions related to probation or any other alternative sentences, the court also cited with approval the case of State v. Henry Floyd Sanders, No. M2011–00962–CCA–R3–CD, 2012 WL 4841545 (Tenn. Crim. App. Oct. 9, 2012), perm. app. granted (Tenn. Feb. 15, 2013). Caudle, 388 S.W.3d at 278. Sanders cited to the Bise language in stating the applicable standard of review on the issue of consecutive sentencing. Henry Floyd Sanders, 2012 WL 4841545, at *15. We, however, conclude that we need not resolve the issue of whether the Bise standard now applies to our review of consecutive sentencing because the result in this case would be the same regardless of whether the Bise standard applies.

offender.[8]  Based upon the trial court's finding that the Defendant was sentenced for offenses committed while on probation, a finding that is amply supported by the record, we conclude that the trial court properly imposed consecutive sentences.[9]

Lastly, the Defendant asserts that the trial court failed to consider the Defendant's "youth and potential for rehabilitation" in imposing consecutive sentences.  This contention also is without merit.  In sentencing the Defendant, the trial court noted that confinement for an extended period of time was necessary to protect society from the Defendant's unwillingness to lead a productive life; that the Defendant had resorted to criminal behavior and lived an "anti-societal life style"; and that "at the age of twenty-three, we already have a very clear picture being painted of this young man's life and the direction he has chosen and the direction he is headed."  Thus, the trial court clearly concluded that the Defendant was a poor candidate for rehabilitative efforts.  Moreover, the trial court also found that the aggregate sentence "reasonably relates to the offense[s] for which the [D]efendant stands convicted."  We agree.  The Defendant's sentence was justly deserved in relation to the seriousness of the offenses and no greater than deserved under the circumstances.

Thus, we hold that the trial court imposed these sentences in a manner consistent with the purposes, principles, and goals of the Sentencing Act.  Accordingly, the Defendant is entitled to no relief on this issue.

---

[8] If, indeed, the Bise standard does apply to the review of consecutive sentencing, see supra note 7, we are led to question the continuing vitality of the requirements for additional findings mandated by State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995), when a trial court imposes consecutive sentences based on the dangerous offender factor.

[9] The trial court issued written findings of facts utilizing a standardized form with respect to each conviction.  The trial court, on each of the findings of fact forms, marked that mandatory consecutive sentencing was required because "[t]he defendant committed a felony while on parole or other release program."  This standardized form contains a clerical error.  Consecutive sentencing is mandatory, in this regard, only when a defendant committed a felony "while on *parole* from a state prison, jail or workhouse." See Tenn. Code Ann. § 40-28-123(a) (2006) (emphasis added); see also Tenn. R. Crim. P. 32(c)(3) (reiterating those instances in which consecutive sentencing is mandated by statute).  According to the record, the Defendant, in this case, was released on probation.  Thus, mandatory consecutive sentencing is not mandated by statute.  Any error in this regard, however, is harmless because we affirm the consecutive sentencing in these cases on other grounds.

**CONCLUSION**

For the reasons set forth above, we affirm the judgments of the trial court. We, however, remand this matter for the correction of a clerical error contained in the aggravated robbery judgment order in Case One so that the judgment order reflects that the conviction is a Class B felony instead of a Class C felony.

_____
JEFFREY S. BIVINS, JUDGE