IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 19, 2024 Session

## STATE OF TENNESSEE v. CHARLES LYNELL SIMS

**Appeal from the Criminal Court for Knox County**
**No. 125426   G. Scott Green, Judge**

_____

**No. E2024-00232-CCA-R3-CD**

_____

The Defendant, Charles Lynell Sims, pled guilty in the Knox County Criminal Court to aggravated assault, a Class C felony, in exchange for a Range II sentence of eight years, with the manner of service left to the trial court's determination. Following a sentencing hearing, the trial court ordered the Defendant to serve the entire eight-year sentence in confinement. On appeal, the Defendant argues that the trial court abused its discretion in ordering a sentence of total confinement. Based on our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and TOM GREENHOLTZ, J., joined.

Daniel L. Bell, Knoxville, Tennessee, for the appellant, Charles Lynell Sims.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Deborah Malone, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The transcript of the guilty plea hearing is not included in the record on appeal. However, the Defendant's counsel stipulated at oral argument to the following facts as recited in the affidavit of complaint and in the presentence report. On April 9, 2023, a

Knoxville police officer responded to a hotel room, where the Defendant's then-girlfriend, Breann Trussell, reported that the Defendant had assaulted her. The victim, who was bleeding from the nose and mouth and had a red neck, stated that she had arrived home from work to find the Defendant inside her hotel room. She said that the Defendant had been drinking and became irate, so she stepped outside for some fresh air. The Defendant chased her, threw her against the door, placed both hands around her neck, and strangled her for approximately one minute, preventing her from breathing. The Defendant also slammed her head against the door while his hands were wrapped around her neck and hit her in the face with his closed fist approximately five times.

The Defendant was arrested and charged by the Knox County Grand Jury with aggravated assault by strangulation and domestic assault. Pursuant to a negotiated plea, the Defendant subsequently entered a guilty plea to aggravated assault in exchange for the State's recommendation of a Range II sentence of eight years, with the manner of service, including the Defendant's request for probation, to be determined by the trial court following a sentencing hearing.

At the beginning of the January 29, 2024 sentencing hearing, the trial court noted the Defendant's disavowal of wrongdoing in the version of events he had provided for the presentence report. The trial court, therefore, first sought the Defendant's assurance that he accepted responsibility for his actions and had pled guilty because he was, in fact, guilty of the offense. The Defendant responded in the affirmative. The State then introduced the Defendant's presentence report, which reflected that the sixty-six-year-old Defendant had a lengthy criminal history that included over twenty felony convictions and several misdemeanor convictions. The presentence report further reflected that the Defendant's most recent conviction was a 2009 conviction for violation of the sex offender registry, that the Defendant had a prior sex offense conviction in which the victim was a minor, that the Defendant had a one-year-old infant son currently in State custody whose mother was the victim in the instant case, and that the Defendant reported that he had a commercial driver license ("CDL") and planned to seek employment as a truck driver.

The Defendant introduced as a collective exhibit a certificate of his completion of twelve classes in the "Men of Valor" program, a graduation certificate he had earned from the "World Bible School," a certificate recognizing his achievement in reading the Bible every day, and a letter of commendation from the director of the Men of Valor program.

The State proposed as enhancement factors that the Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish his range, that the Defendant before sentencing failed to comply with the conditions of a sentence involving release into the community, and that the Defendant had no hesitation about committing an offense when the risk to human life was high. *See* Tenn. Code Ann. § 40-35-114(1), (8), (10). The Defendant proposed as factors in mitigation the

fact that most of his lengthy criminal history occurred years in the past, his past successes on probation, the certificates and letter of commendation evidencing that he had "focused himself on his religious studies and bettering himself," his belief that his CDL would enable him to quickly gain employment, and his desire, as expressed to defense counsel, of returning to the community and becoming a positive influence on his young son. *See id.* § 40-35-113(13).

In an allocution to the trial court, the Defendant stated that he had learned a lot from the situation and realized he "was wrong for behaving the way [he] did." He then explained that he had been distraught because the Department of Children's Services had recently taken custody of his dearly loved son, only allowing him and the victim one hour per week of visitation.

At the conclusion of the hearing, the trial court observed that the Defendant was "a walking contradiction" in that he seemed "like a very pleasant articulate gentleman" in court, yet the victim's account of the offense, "corroborated in extensive detail by what the officers found at the scene[,]" showed that he had committed a violent felony. The trial court then noted that the Defendant had "already received a significant break in th[e] case" by the plea agreement, which allowed him to receive a Range II sentence of eight years instead of the potential fifteen-year sentence at 100% he faced had he been convicted at trial. Finally, the trial court observed that the Defendant's "good record" helped him, but that his "bad record" hurt him, and that his bad record was "awful and [he] committed a violent felony." The trial court, therefore, sentenced the Defendant to serve his eight-year sentence as a Range II offender in the Tennessee Department of Correction.

Thereafter, the Defendant filed a timely notice of appeal to this court.

## ANALYSIS

The Defendant argues on appeal that the trial court abused its discretion in sentencing by not properly considering or weighing the different factors required in imposing a sentence of incarceration. Specifically, the Defendant contends that the trial court erred by not considering or giving appropriate weight to the Defendant's proposed factors in mitigation, which the Defendant asserts demonstrate that he would be a good candidate for probation. The State responds that the trial court appropriately exercised its broad discretion under *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012), by imposing a within-range sentence of incarceration based upon the purposes and principles of sentencing.

This court must first point out that the defense, the State and the trial court spent a tremendous amount of time focused on enhancement and mitigating factors that were relevant only to the determination of length of sentence. In this case, the Defendant entered

a guilty plea in exchange for a fixed term of eight years as a Range II offender. The only issue left open for the trial court to decide was how the sentence was to be served. That is, whether a sentence of confinement or some form of alternative punishment is warranted in this case.

This court reviews the length, range, and manner of service imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *Bise*, 380 S.W.3d at 708; *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012) (applying the standard to alternative sentencing).

A defendant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. *See* Tenn. Code Ann. § 40-35-303(a). The following sentencing considerations in Tennessee Code Annotated section 40-35-103(1) should be used to determine whether alternative sentencing is appropriate:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Additionally, a court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. *See id.* § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. *Id.* § 40-35-102(5).

The burden is on the defendant to demonstrate suitability for full probation. *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017). In evaluating the suitability of probation, the trial court should consider: "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *Id.*

We agree with the State that the trial court acted well within its discretion in ordering a sentence of full confinement. The record reflects that the trial court considered the sentencing guidelines, the facts and circumstances surrounding the offense, and the

background information in the presentence report, including the Defendant's extremely lengthy criminal record, before ordering a sentence of confinement. The trial court also appropriately considered the fact that the Defendant was already receiving the plea-bargained benefit of an eight-year sentence as a Range II offender, despite the Defendant's lengthy criminal history that would otherwise qualify him as a persistent or career offender. *See*, *e.g.*, *State v. Stephenson*, No. E2023-00241-CCA-R3-CD, 2023 WL 8889713, at *4 (Tenn. Crim. App. Dec. 26, 2023), *perm. app. denied* (Tenn. May 16, 2024) (concluding that trial court did not abuse its discretion in basing its denial of probation on defendant's bad record and fact that he received a lenient plea bargain); *State v. McIntosh*, No. E2022-00715-CCA-R3-CD, 2023 WL 3676889, at *6 (Tenn. Crim. App. Feb. 22, 2023), *perm. app. denied* (Tenn. Oct. 13, 2023) (recognizing that a defendant's receipt of a lenient plea bargain is an appropriate factor to consider in sentencing); *State v. Bowman*, No. E2011-01906-CCA-R3-CD, 2012 WL 3264481, at *2-3 (Tenn. Crim. App. Aug. 13, 2012) (considering leniency in plea agreement as substantial evidence in support of the trial court's denial of diversion). Accordingly, we affirm the sentence imposed by the trial court.

## CONCLUSION

Based on our review, we affirm the judgment of the trial court.

s/ JOHN W. CAMPBELL
JOHN W. CAMPBELL, SR., JUDGE