# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs at Knoxville October 15, 2013

## STATE OF TENNESSEE v. TAMIKA MICHELLE CLAYBOURNE

**Appeal from the Circuit Court for Marshall County**
**No. 2012-CR-144      Robert Crigler, Judge**

---

**No. M2013-00460-CCA-R3-CD - Filed December 30, 2013**

---

The Defendant, Tamika Michelle Claybourne, challenges the trial court's denial of alternative sentencing. After a review of the record and the applicable authorities, we discern no error in the trial court's determinations and affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JEFFREY S. BIVINS, JJ., joined.

Donna Orr Hargrove, District Public Defender; and William J. Harold, Assistant Public Defender, for the appellant, Tamika Michelle Claybourne.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; Robert Carter, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION
## FACTUAL BACKGROUND

The Defendant was indicted for the following offenses in July 2012: eight counts of obtaining controlled substances by fraud, Class D felonies, and eight counts of TennCare fraud, Class E felonies. On November 15, 2012, the Defendant entered open guilty pleas to all the offenses as charged. The State offered the following facts as a basis for the guilty pleas:

> The facts . . . are as follows: September 27, 2011, to May 16, 2012, [the Defendant] was . . . working as a medical assistant at Celebration Family Care Clinic . . . in Lewisburg, Tennessee.

During that period of time, she called in eight prescriptions for 120 tablets, on each occasion, of 10 milligram[s] Lortab, or hydrocodone, to Parson's Pharmacy, [for] a total of . . . 960 tablets.

She called these in without authorization from any medical person at the clinic. She called them in, in her name. This was discovered by a combination of phone calls between Parson's Pharmacy and the clinic. A report was made. Each of these times, she was working, but she was on TennCare. Each of these times, TennCare paid $21 . . . . [T]hat is $168 restitution to TennCare.

When the [D]efendant was . . . first questioned by the people at the Celebration Family Care Clinic, she denied these accusations. Then in a letter of resignation . . . , she admitted to [calling in the prescriptions].

Then an investigator from the Inspector General's office was notified. He questioned her. She admitted to that investigator [that she] call[ed] in the prescriptions, pick[ed] up the prescriptions, [and] fill[ed] the prescriptions to her TennCare account.

She did say . . . that someone else, an ex-boyfriend, made her do it, but she wouldn't give his name.

A sentencing hearing was held on January 23, 2013. At the hearing, Crystal Gray, employed with the Department of Correction as a presentence report officer and probation officer in Marshall County, presented the Defendant's presentence report. Ms. Gray testified that the Defendant cancelled her scheduled appointments with Ms. Gray twice due to work obligations. Ms. Gray testified that she was able to meet with the Defendant to prepare the presentence report during the third appointment because she threatened to revoke the Defendant's bond. She further testified that she supervises offenders on State probation. The offenders are required to meet with her, and failure to do so may result in their probation being revoked.

Ms. Gray stated that the Defendant had a conviction for facilitation of aggravated robbery in Maury County on her record. While on probation for this conviction, the Defendant tested positive for marijuana on one occasion and for cocaine on another occasion. The Maury County probation office did not revoke her probation for these violations but instead imposed additional sanctions. Ms. Gray testified that the Defendant was on probation for five years, which ended in May of 2011, for the facilitation of aggravated robbery conviction and that the current offenses commenced in September of 2011. On cross-examination, she testified that the Defendant had given consistent statements about her

abusive ex-boyfriend; that she was in the Hope House Domestic Violence Program; that she had been attending Centerstone, a behavioral healthcare organization; that she had two adult children and two minor children; and that she was employed at the time of the hearing.

Aside from the testimony offered by Ms. Gray, the presentence report further stated that the Defendant was thirty-eight years old at the time of the sentencing hearing and detailed the Defendant's criminal history. The Defendant had been charged with disorderly conduct at the age of twenty-one which resulted in a six month suspended sentence. The Defendant was charged with shoplifting just over a year after the disorderly conduct conviction which resulted in an eleven month and twenty-nine day sentence with all but thirty days suspended. Just over two years after the shoplifting charge, the Defendant was convicted of driving on a suspended license. At the age of twenty-seven, the Defendant was convicted of resisting arrest with a sixty-day suspended sentence. The Defendant was convicted of speeding at the age of twenty-eight.

At the age of thirty-one, the Defendant was convicted of facilitation of aggravated robbery, as stated by Ms. Gray, and received a sentence of five years' probation. While on this probation, the Defendant was convicted of three traffic offenses: one for a violation of financial responsibility requirements, one for a violation of an undefined driver's license law, and one for speeding.

James Mays, an employee at Celebration Family Care Clinic, testified that he had worked with the Defendant. Mr. Mays testified that he had seen bruises on the Defendant and that the Defendant told him that her daughter's father had caused the bruises. On cross-examination, Mr. Mays stated that he believed that the Defendant had shown him the bruises, which were on her thighs and hips, around May 2012.

At the close of proof, the Defendant offered the following allocution:

Your Honor, I just want to say I am very sorry[] and with fear and regret. I just feared for my life. And still, to this day, I am terrified.

I am working through the Hope House agency to try to see about getting me removed from Maury County or even out of the state. But we just have to see what all is going on with the court situation because she said I do still have up to a year to press charges against him, if it came down to it.

In issuing its findings, the trial court noted the sentencing considerations and found the following enhancement factors applicable: (1) "a previous history of criminal convictions and criminal behavior" to which it applied great weight; (8) a failure "to comply with the

conditions of a sentence involving release into the community" in that the Defendant had tested positive for marijuana and cocaine while on probation; and (14) the abuse of "a position of public or private trust" in that she used her employment status to facilitate the crimes. See Tenn. Code Ann. § 40-35-114(1), (8), (14). The trial court also found one mitigating factor, number (13), that the Defendant had cooperated with investigators and had entered an open plea. See Tenn. Code Ann. § 40-35-113(13). The trial court explained that it was denying alternative sentencing because the Defendant had a long history of criminal conduct and because less restrictive measures had been applied to the Defendant both frequently and recently, and those measures were unsuccessful. See Tenn. Code Ann. § 40-35-103(1)(A), (C). The trial court sentenced the Defendant as a Range I, standard offender as follows: for the eight counts of obtaining controlled substances by fraud, three years and six months each; and for the eight counts of TennCare fraud, one year and nine months each. The sentences are to be served concurrently, for an effective three year and six month sentence in the Department of Correction (DOC).

## ANALYSIS

The Defendant contends that the trial court erred by denying alternative sentencing because it improperly found a long history of criminal conduct, because the "totality of the circumstances" did not demand a sentence of confinement, because the trial court did not apply the mitigating factor relating to excuse or justification, and because the state has scarce economic resources. The State responds that alternative sentencing was properly denied because of the Defendant's criminal history and the ineffectiveness of previous probationary sentences. We agree with the State.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b). When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor, the error will not remove the presumption of reasonableness from its sentencing

determination. Bise, 380 S.W.3d at 709. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Id. at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2010), Sentencing Comm'n Cmts.; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

The Defendant was eligible for probation because the "sentence actually imposed upon [her was] ten (10) years or less." Tenn. Code Ann. § 40-35-303(a), (b). Thus, the trial court was required to consider probation as a sentencing option. Tenn. Code Ann. § 40-35-303(b). However, no criminal defendant is automatically entitled to probation as a matter of law. State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). The defendant has the burden of establishing his or her suitability for full probation. See Carter, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-303(b)). A defendant must demonstrate that probation will "subserve the ends of justice and the best interest of both the public and the defendant." Carter, 254 S.W.3d at 347 (quoting State v. Housewright, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978).

Additionally, a defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). Following the June 7, 2005 amendments to our Sentencing Act, no longer is any defendant entitled to a presumption that he or she is a favorable candidate for alternative sentencing. State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008). Further, Tennessee Code Annotated section 40-35-102(6) is only advisory. See Tenn. Code Ann. § 40-35-102(6)(D).

In determining a defendant's suitability for alternative sentencing, the trial court should consider whether

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

After reviewing the record and the applicable authorities, we conclude that the trial court did not abuse its discretion in denying all forms of alternative sentencing. The trial court found that the Defendant had a long history of criminal conduct. The trial court further found that the Defendant had been on probation frequently and recently, and it had not deterred her criminal activity. The record supports these findings. With respect to the former finding, the Defendant had eight misdemeanor convictions and one felony conviction before committing the sixteen felonies in the current case. With respect to the latter finding, the Defendant had been placed on probation multiple times, including the five year probation sentence for the facilitation of aggravated robbery conviction. During the five year probation, the Defendant was convicted of three misdemeanors and failed two drug tests. The Defendant then started the actions that are the basis for the convictions in the present case only four months after the five year probation ended. Thus, the previous alternative sentences were unsuccessful in deterring her future criminal activity.

We agree with the trial court that the mitigating factor found in Tennessee Code Annotated section 40-35-113(3) relating to the existence of substantial grounds that establish an excuse or justification is inapplicable in this case. The evidence shows that the Defendant had a twenty-year criminal history. Further, she would not give the name of the ex-boyfriend who allegedly made her commit these crimes to the authorities. Mr. Mays did testify that the Defendant had shown him the bruises allegedly caused by her ex-boyfriend, but this was not until May 2012, which was after the crimes in the instant case had occurred. Thus, the record supports the trial court's finding.

The Defendant emphasizes that she was convicted of nonviolent offenses and argues that the DOC's scarce prison resources would be better used for other types of criminals.[1] Our statutes favor sentences of incarceration for felons committing the most severe offenses as well as felons with criminal histories indicating a disregard for the law and past failure of

---

[1] Despite the Defendant's contention that prisons are overcrowded, there is no evidence in the record to support this argument. Thus, we will not consider it.

rehabilitative efforts. The Defendant meets the last two criteria. The Defendant has made no additional arguments as to why she is suitable for alternative sentencing and, thus, has failed to meet her burden. Again, there is no evidence to rebut the presumption of reasonableness afforded the trial court in its sentencing determinations. Therefore, the Defendant is not entitled to relief on this issue.

## CONCLUSION

Based on our review of the record and the applicable law, we discern no reversible error and affirm the judgments of the trial court.

_____
D. KELLY THOMAS, JR., JUDGE