# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 9, 2014

## STATE OF TENNESSEE v. ROY ANTHONY HALEY

**Appeal from the Circuit Court for Bedford County**
**No. 17558     Lee Russell, Judge**

---

**No. M2013-02756-CCA-R3-CD - Filed November 5, 2014**

---

The defendant, Roy Anthony Haley, appeals his Bedford County Circuit Court jury conviction of theft of property valued at $10,000 or more but less than $60,000, contending that the sentence imposed by the trial court was excessive. We affirm the conviction and sentence but remand for correction of a clerical error in the judgment.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed; Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and TIMOTHY L. EASTER, JJ., joined.

James Ronald Tucker (at sentencing and on appeal); and William J. Dearing, III, (at trial), Shelbyville, Tennessee, for the appellant, Roy Anthony Haley.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Robert Carter, District Attorney General; and Michael D. Randles and Richard Aron Cawley, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The Bedford County Circuit Court grand jury charged the defendant with one count of theft of property valued at $60,000 or more but less than $250,000. The trial court conducted a jury trial on July 8, 2013.

At trial, Wallace L. Chambers, Jr., a military veteran, testified that he and his wife, Ava Alito Hale Chambers, were both retired. Mr. Chambers stated that his wife suffered from Alzheimer's disease and was bedridden, which necessitated his hiring a full-time caregiver, Laketia Grizzle, in January 2012. In April 2012, Ms. Grizzle married the defendant and changed her name to Laketia Haley. Mr. Chambers occasionally hired the

defendant to perform odd jobs on his property, which Mr. Chambers classified as "exclusively outside work." Mr. Chambers testified that the defendant "had no reason to be in the house except to come in and eat lunch, maybe."

Mr. Chambers owned an extensive coin collection, weighing approximately 72 pounds and worth between $65,000 and $70,000, which he had inherited from his father and had added to over the years. Mr. Chambers had planned to pass the collection on to his grandchildren upon his death. Mr. Chambers stored the collection inside a safe which was hidden in the back of a closet in his living room. When questioned about access to the safe, Mr. Chambers stated that he trusted Ms. Haley and that she had opportunities to access the safe unseen by either of her employers. The defendant also would have had access to the safe when he was inside Mr. Chambers' residence. Mr. Chambers denied that either Ms. Haley or the defendant had permission to remove any of the coins from his home.

On July 22, 2012, Mr. Chambers received a telephone call from Vickie Bly, a person he had never met or heard of prior to receiving the call. Following the call from Ms. Bly, Mr. Chambers checked the safe and discovered that his entire coin collection was missing. Mr. Chambers immediately contacted the sheriff's department and filed a report. According to Mr. Chambers, the sheriff's department interviewed Ms. Haley, and, following that interview, she and the defendant fled. The sheriff's department recovered "less than half" of the coins that were stolen.

Laketia Elaine Haley testified that, while she was working for Mr. and Mrs. Chambers, she and the defendant were both addicted to painkillers, and the defendant did not have steady employment. In March, Ms. Haley discovered the coin collection inside the Chambers's safe, and she began by stealing "10 to 15 rolls" of coins. She and the defendant later stole "the majority" of what remained in the collection. Ms. Haley and the defendant took the coins to local pawn shops and sold them, using the majority of the proceeds to purchase painkillers. When the sheriff's department first contacted Ms. Haley about the stolen coins, Ms. Haley denied any involvement, and when the sheriff's department contacted her to arrange a follow-up interview, Ms. Haley and the defendant fled to Florida. Ms. Haley and the defendant were eventually arrested in Florida and returned to Tennessee. Ms. Haley admitted that she had recently pleaded guilty to theft of property valued at $10,000 or more but less than $60,000 and that she was awaiting sentencing.

Both Ron Arnold and Michael Bass testified that, between March 5 and July 20, 2012, the defendant and Ms. Haley patronized their respective pawn shops and sold numerous coins; records of each of those transactions were introduced into evidence by the State. Following the testimony of Mr. Bass, the parties stipulated that the value of the coins at issue was greater than $10,000 but less than $60,000.

Detective Scott Jones with the Bedford County Sheriff's Department testified that when he initially interviewed Ms. Haley, she had denied all involvement in the theft of the coins. After Ms. Haley was arrested in Florida and returned to Tennessee, Detective Jones again interviewed her, and on that occasion, she admitted that she had stolen the coins and that she and the defendant had sold the coins to "fund their drug addictions."

With this evidence, the State rested its case. Following the trial court's denial of the defendant's motion for judgment of acquittal and a *Momon* colloquy, the defendant elected not to testify and chose not to present any proof. Based on this evidence, the jury convicted the defendant of theft of property valued at $10,000 or more but less than $60,000.

The trial court conducted a sentencing hearing on November 7, 2013. Over the defendant's objection, the State entered into evidence the defendant's presentence report. The defendant testified that he was incarcerated from August 20, 2001, until sometime in June 2003 for the manufacture of amphetamines. Three of the convictions listed in the defendant's presentence report – theft of property valued at $500 or less, domestic violence, and unlawful use of drug paraphernalia – were for crimes committed during that time period in which the defendant was incarcerated, and the defendant insisted that he therefore could not have been the perpetrator. When questioned about the three offenses during cross-examination, however, the defendant stated that he could not remember committing any of those offenses and offered the possibility that the offense dates listed in the presentence report were simply incorrect. The defendant did not take issue with the remaining convictions listed in the presentence report, which included the following: initiation of the process of manufacturing methamphetamine; possession of a firearm by a convicted felon; reckless endangerment; theft of property valued at $1,000 or more but less than $10,000; passing forged checks; and three counts of forgery.

The defendant admitted that he had previously been addicted to drugs but that he was now "clean as far as chemical clean, but you know, . . . you still got, I guess, it's mental issues with the drugs, you know." The defendant also stated that he was "being looked at as the primary here in this case and, really, only thing I did was sold coins that I had no idea were stolen."

Because the trial court found that the defendant had been convicted of at least five prior felonies, the court sentenced the defendant as a Range III, persistent offender, noting that the "range is 10 to 15 years at 45 percent." With respect to enhancement and mitigating factors, the trial court found as follows:

> First off, enhancing factor (1) is certainly present. Disregarding
> the five felony convictions necessary to establish the range, we

have the additional forgery and passing forged check convictions that were not used, but we have a number of misdemeanors, like the domestic violence, and the theft of $500, and the assault, and the drug paraphernalia, and the driving on revoked.

I do make a factual finding that, indeed, he is the person who was convicted . . . of the three crimes that . . . are in dispute here where he says that he was in jail at that time. The problem is, as the General has pointed out, he takes concurrent sentences on two cases, one of which undeniably was him. So, the most this could possibly be is a typo as to the dates of the offenses. But, frankly, he was not credible on that subject at all. So, I find that all those misdemeanors are present and . . . enhancement factor number (1), the previous history of criminal convictions, is very much present.

I find, likewise, that number (8) is present, and I would point out, too, the assault conviction where . . . the suspension of his sentence was revoked. That's from 2008. Enhancing factor (13) is very much present. He was on probation . . . from Warren County on the eight-year sentence that was imposed on him in 2010. That was in place when he did this. So, at least those three enhancing factors are present, and that's what I find to be present here.

We look at mitigating factors. Yes, number (1) is present. He . . . did not cause or threaten serious bodily harm; however, I give that no significant weight in the facts here. Was he a minor player? That would be number (4). Absolutely not. He was a major player, as the testimony came out at the trial. A major player.

So, the only [mitigating] factor's number (1), and I give that no weight.

Thus, the trial court sentenced the defendant to 15 years at 45 percent. In addition, the trial court ordered the sentence to be served consecutively to the defendant's Warren County sentence for the initiation of the process of making methamphetamine, for which the defendant was on probation when he committed the instant crime. The trial court then

addressed the issue of alternative sentencing:

> There's a presumption in favor of alternative sentencing, but it is powerfully overcome in this case by his long history of failure to live within the measures that are imposed on him. Recently, frequently there have been restrictions that he just could not live within, including his, these very crimes where he could not work out, he could not successfully work out his eight years out of Warren County, but he has, otherwise, has not been able to do so under [T.C.A. §] 40-35-103(5).
>
> I find that he has virtually no potential for rehabilitation and that the risk of committing another offense while on probation is very great indeed. He . . . continues to show no remorse for what he's done to minimalize – minimalize the, his role in – when that simply is not supported by the proof in this case. He was a major player in this drama and this victimization of the Chambers family. So, respectfully, I think the presumption, any presumption in favor of alternative sentence is very dramatically overcome in this case.

On appeal, the defendant challenges the 15-year sentence imposed by the trial court, arguing that the sentence imposed was not "the least severe measure necessary," did not comport with the principles of the Sentencing Reform Act, and should be reduced. In addition, the defendant contends that the trial court erred by failing to apply the mitigating factor that his conduct "neither caused nor threatened serious bodily injury." *See* T.C.A. § 40-35-113(1). The State argues that the record supports the trial court's sentencing decision. Following our review, we agree with the State.

Our supreme court has adopted an abuse of discretion standard of review for sentencing and has prescribed "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn.2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise* at 706 n.41 (citing T.C.A. § 40-35-210(e)). The abuse-of-discretion standard of review and the presumption of reasonableness also

applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

In the instant case, the record reflects that the trial court considered all relevant sentencing principles, including the evidence adduced at trial, the sentencing hearing, the presentence report, the principles of sentencing, the nature and characteristics of the conduct, enhancing and mitigating factors, and the defendant's statement. *See* T.C.A. § 40-35-210(b). As a Class C felony for a Range III, persistent offender, the conviction for theft of property valued at $10,000 or more but less than $60,000 is sanctioned by a sentencing range of a minimum of 10 years and a maximum of 15 years. *See* T.C.A. § 40-35-112(c)(3). The trial court found three enhancement factors: that the defendant had a previous history of criminal convictions in addition to those necessary to establish the appropriate range; that the defendant had previously failed to comply with conditions of a sentence involving release into the community; and that the defendant had committed the instant felony while released on probation. *See* T.C.A. § 40-35-114(1), (8), (13). The trial court disagreed with the defendant's position that he had played a minor role in the commission of the offense and gave no weight to the fact that the crime neither caused nor threatened serious bodily injury. *See* T.C.A. § 40-35-113(1), (4). "A trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). For this reason, an appellate court is precluded from reweighing appropriately applied enhancement and mitigating factors. *See id.* at 344-45. Accordingly, we find no error in the trial court's refusal to attach more weight to the fact that his conduct did not cause bodily injury.

Moreover, the record further reflects that the trial court based its sentencing decision on the considerations set forth in Code section 40-35-103, finding that "[r]ecently, frequently there have been restrictions that [the defendant] could not live within" and that the defendant "has no virtually no potential for rehabilitation." *See* T.C.A. §40-35-103(1)(C), (5). Taking all of this into consideration, we find that the trial court did not abuse its discretion by sentencing the defendant to 15 years' incarceration, and we conclude that the record supports the length of sentence imposed in this case.

We detect, however, an error that requires correction in the judgment. The original judgment in this case, which was entered on November 7, 2013, failed to indicate that the defendant's sentence was to be served consecutively to his Warren County sentence. An amended judgment was entered on November 14, 2013, indicating that the defendant's sentence was to be served consecutively to "Warren Co. #F12304 & any other sentence." This amended judgment, however, was incorrectly marked as an original judgment. To avoid any confusion in the future, we remand the case to the trial court for entry of a corrected judgment.

Accordingly, we affirm the conviction and sentence but remand the case for entry of a corrected judgment as outlined in this opinion.

_____
JAMES CURWOOD WITT, JR., JUDGE