IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs December 15, 2015

## STATE OF TENNESSEE v. PHILLIP SERPAS

**Appeal from the Criminal Court for Sullivan County**
**No. S62455    R. Jerry Beck, Judge**

_____

**No. E2015-00693-CCA-R3-CD – Filed January 29, 2016**

_____

Appellant, Phillip Serpas, entered guilty pleas to two counts of unlawfully obtaining a prescription for controlled substances by fraud, Class D felonies, and one count of conspiracy to obtain or attempt to obtain a controlled substance by fraud, a Class E felony. The trial court sentenced him as a Range I, standard offender to concurrent terms of two years each for the Class D felonies and one year for the Class E felony. The trial court held a hearing on the issue of alternative sentencing and ordered appellant to serve his effective two-year sentence in the Tennessee Department of Correction. Appellant appeals the denial of alternative sentencing. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ., joined.

Stephen M. Wallace, District Public Defender; and Andrew J. Gibbons, Assistant District Public Defender, for the Appellant, Phillip Serpas.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Barry Staubus, District Attorney General; and Andrea Black, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I. Facts

#### A. Guilty Plea Submission Hearing

Appellant was charged with unlawfully obtaining a prescription for alprazolam, a Schedule IV controlled substance, by fraud, a Class D felony; unlawfully obtaining a prescription for oxycodone, a Schedule II controlled substance, by misrepresentation, fraud, forgery, deception, or subterfuge, a Class D felony; and conspiracy to obtain or attempt to obtain a controlled substance by fraud, a Class E felony. He was also charged with fraudulently obtaining TennCare medical assistance benefits, a Class E felony, but that charge was dismissed by the State.

The State and defense counsel entered into a stipulation of facts underlying the charged offenses:

> [H]ad the State proceeded to trial[,] the State would show that on August 19, 2011, Dr. Dana Brown saw three patients: Michael Johnson, James Suttles, and [appellant]. After Michael Johnson, James Suttles, and [appellant] left, . . . Dr. Brown noticed that there were some similarities in the prescription reports that they provided to Dr. Brown.
>
> After he looked at those records, he determined that there were two other records that were similar as well: Amber Price and Rebecca Johnson's. After that[,] . . . Dr. Brown reported that to the police, and an investigation ensued, and it was determined that on July 27, 2011, Amber Price presented an altered diagnostic imaging report and altered patient profile to Dr. Dana Brown to obtain the prescriptions.
>
> On July 27, Amber [Price] obtained the prescription for oxycodone[] and would not have received that except for the presentation of the forged documents.
>
> On October 24, Amber Price presented . . . the same altered diagnostic imaging report and altered patient profile to Dr. Brown, and she then obtained the prescriptions.
>
> On July 27, Rebecca Johnson presented the same altered diagnostic imaging report and patient profile to Dr. Brown, and she too obtained the prescriptions.
>
> On August 19, [appellant] presented the same altered diagnostic imaging report and patient profile or variations thereto to Dr. Brown for purposes of fraudulently obtaining prescriptions for controlled substances.

On August 19, [appellant] did obtain the prescriptions for alprazolam and oxycodone, Schedule IV and Schedule II controlled substances, to which he was not medically entitled and would not have received but for the presentation of the forged documents.

On August 19, Michael Johnson presented the same altered diagnostic imaging report and patient profile to Dr. Brown, and he too obtained the prescriptions from Dr. Brown.

On August 19, James Suttles also presented the same altered diagnostic imaging report and patient profile to Dr. Brown, and he as well obtained [prescriptions for] controlled substances from Dr. Brown.

Pursuant to the plea agreement, appellant acknowledged that the only further legal proceeding in the instant case would be a hearing to determine whether he should receive alternative sentencing.

B.  Alternative Sentencing Hearing

The trial court held a hearing on appellant's request for alternative sentencing on April 13, 2015.  At the outset of the hearing, the trial court noted appellant's lack of participation in the preparation of the presentence report.  It also reviewed appellant's criminal history and found that he had convictions for driving while his license was suspended or revoked, two felonies for failure to appear, misdemeanor violation of the "bad check law," two violations of the "driver's license law," possession of marijuana and drug paraphernalia, and violations of probation in four separate cases.

Appellant testified that he was thirty-three years of age, that he had a six-year-old son of whom he had custody, and that he was expecting a second child.  Appellant said that he was training to be a dental technician.  He explained that he had health issues that included a titanium rod and three pins in his right femur as a result of a car accident in 2006 and a herniated disc in his lower back.  He was being treated at a pain management clinic to assist him in lowering the dose of pain medication that he took.  A doctor from the clinic sent a letter informing the court that the program would require twelve to eighteen months to complete.

Appellant maintained that if granted probation, he would continue to reside at the listed address with his son.  The expectant mother of his unborn son would also reside with them.  When his training was complete, he would continue to be employed at East Tennessee Dental Restoration.  He was also employed part-time by a rental property owner.  Appellant stated that he would comply with "whatever rules . . . and restrictions" of probation that the trial court imposed.  Speaking to the court on his own behalf,

appellant acknowledged that his prior record was not favorable but that upon release from prison, he completed parole successfully. He maintained two jobs and sought training to better his employment situation. He claimed that the current conviction was the result of an "older charge." He explained that the offenses occurred in 2009 but that he was not indicted until August 2011. However, the court noted that both the indictment and the presentence report indicated that the offense date was August 19, 2011.

On cross-examination, appellant admitted that the mother of his two children was Amber Price, one of his codefendants in the instant case.

Appellant presented his aunt, Deborah Jean Goddard-Peters, as a witness. Ms. Goddard-Peters testified that she and her husband owned East Tennessee Dental Restoration, a full-service laboratory that produced dentures, partials, crowns, and bridges. Appellant was receiving training in the denture department. He had received "PTC training," much of which he completed at home. She characterized appellant as a "great technician." She said, "We're counting on him. We need him. . . . I've spent a lot of money and time into training him, . . . for our business . . . ." Ms. Goddard-Peters asserted that appellant was going to work at the Rural Access to Medicine health fair, which provided a free service to individuals who could not afford health insurance.

Through a conference with counsel, the trial court concluded that appellant was on determinate release,[1] which was a release in the community, from a prior conviction[2] when he committed the instant offense. Appellant was granted determinate release in December 2010. According to the indictments, the instant offenses occurred in August 2011, and in November 2011, appellant was ordered to serve his previous sentence. He was indicted on the instant offenses in 2013.

Upon this evidence, the trial court ruled:

The Court has carefully reviewed the presentence report, argument of counsel, and the testimony heard. The Court is particularly concerned with this case. The Defendant has a – two prior felonies for failure to appear. He has other misdemeanor offenses. He was on determinate release when . . . these offenses occurred.

---

[1] Tennessee Code Annotated section 40-35-501 governs release eligibility for imprisoned offenders. Section 40-35-501(a)(3) defines what is known as determinate release as: "[n]otwithstanding any other law, inmates with felony sentences of two (2) years or less shall have the remainder of their sentence suspended upon reaching their release eligibility date."

[2] The record does not reflect the conviction for which appellant was serving a sentence on determinate release.

The Court finds the unfavorable factors heavily outweigh any favorable factor favoring probation or alternative sentencing. I find that the unfavorable factors do not blend with a Community Corrections sentence . . . .

He says he don't [sic] have a drug problem.

Anyway, two years; Range 1, standard. He'll be required to serve his sentence.

Appellant appeals the denial of alternative sentencing in this case

## II. Analysis

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4).

Furthermore, "enhancement and mitigating factors are appropriate considerations in determining manner of service as well as length of sentence." *State v. Claude Ronnie Morrison*, No. E2000-02048-CCA-R3-CD, 2001 WL 881382, at *3 (Tenn. Crim. App. Aug. 7, 2001); *see* Tenn. Code Ann. § 40-35-210(b) (providing that in determining a specific sentence and the appropriate combination of sentencing alternatives, the trial court *shall consider*, in addition to other factors, the "[e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114 . . . .") (emphasis added). "The provisions of subsection (b) were designed to permit the court 'the greatest latitude in considering all available information in imposing the appropriate sentence and sentence alternative.'" *Id.* (quoting Tenn. Code Ann. § 40-35-210, Sentencing Comm'n Comts.).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to

probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

We begin with the proposition that a defendant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. *See* Tenn. Code Ann. § 40-35-303(a). An especially mitigated or standard offender convicted of a Class C, D, or E felony is considered to be a favorable candidate for alternative sentencing in absence of evidence to the contrary. *See id.* § 40-35-102(6). "A court shall consider, but is not bound by, this advisory sentencing guideline." *Id.* The trial court must automatically consider probation as an alternative sentence for eligible defendants, but the defendant bears "the burden of establishing suitability for probation." *Id.* § 40-35-303(b). This burden includes demonstrating that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). A trial court should base its decision regarding any sentence involving confinement on the following considerations:

    (A)    Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

    (B)    Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

    (C)    Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1). Furthermore, the trial court should examine the defendant's potential for rehabilitation or lack thereof when determining whether an alternative sentence is appropriate. *Id.* § 40-35-103(5).

It appears from the record that the trial court considered the presentence report and found that appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish his sentencing range and that he was on probation/determinate release at the time he committed the offenses. *See* Tenn. Code Ann. § 40-35-114(1), (13)(C). The presentence report also indicated that appellant had previously failed to comply with the conditions of probation in other cases. *Id.* § 40-35-114(8).

The trial court's ruling did not reflect the specific statutory factor upon which it relied in denying alternative sentencing. *See id.* § 40-35-103(1). However, upon our review, we conclude that the record reflects that "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to [appellant]," and therefore, denial of alternative sentencing was appropriate in this case. *See id.* § 40-35-103(1).

Appellant failed to meet his burden of establishing that the denial of alternative sentencing was erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *Ashby*, 823 S.W.2d at 169. He also failed to carry his burden of proving his suitability for probation, including demonstrating that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *Carter*, 254 S.W.3d at 347 (quoting *Housewright*, 982 S.W.2d at 357). The trial court did not abuse its discretion in ordering appellant to serve his sentence in confinement.

## CONCLUSION

Based on our review of the record, the briefs of the parties, and the applicable legal authority, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE