IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs July 18, 2018

**STATE OF TENNESSEE v. NICHOLAS ZAMARRON**

**Appeal from the Criminal Court for Davidson County**
No. 2016-B-552    Steve Dozier, Judge

**No. M2017-02123-CCA-R3-CD**

The Defendant, Nicholas Zamarron, pleaded guilty to conspiracy to deliver 0.5 gram or more of cocaine and to three counts of possession with the intent to deliver 0.5 gram or more of cocaine. *See* T.C.A. § 39-17-417 (2014). He received a total effective sentence of ten years' incarceration. On appeal, he contends that the trial court erred by denying alternative sentencing. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., JOHN EVERETT WILLIAMS, P.J., joined.

Manuel B. Russ (on appeal) and Jessica Van Dyke (at trial), Nashville, Tennessee, for the appellant, Nicholas Zamarron.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Glenn Funk, District Attorney General; and Ed Ryan, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises from the Defendant's December 2014 arrest in connection with a drug trafficking organization in Nashville. The Defendant was indicted for conspiracy to deliver 300 grams or more of cocaine, three counts of possession with intent to deliver 300 grams or more of cocaine, and money laundering. He pleaded guilty to one count of conspiracy to deliver 0.5 gram or more of cocaine and to three counts of possession with intent to deliver 0.5 gram or more of cocaine. Pursuant to the plea agreement, the Defendant received concurrent ten-year sentences and the manner of service was to be determined by the trial court. The guilty plea hearing transcript is not included in the appellate record.

At the September 29, 2017 sentencing hearing, the presentence report was received as an exhibit and reflected that the Defendant had previous convictions for aggravated assault, three drug-related offenses, and making a false report. The report reflected that the Defendant was age twenty-six and had graduated from high school. The Defendant reported alcohol and marijuana use beginning at age twenty-one but no longer used either.

Metropolitan Nashville Police Department Detective Robert Young testified that, at the time of the offenses, he was an officer on the drug task force, which was investigating Reginald Cooper and John Childree for selling cocaine. Detective Young testified that in October 2014, he observed the Defendant and the Defendant's brother speak with Mr. Childree on Mr. Childree's property. Detective Young stated that in December 2014, he learned that "a load of cocaine was coming in" and that Mr. Cooper "obtained a couple of kilos of cocaine" from Mr. Childree's home. Detective Young said that after receiving the cocaine, Mr. Childree drove the Defendant and the Defendant's brother to a nearby hotel and that the drug task force "established surveillance [at the hotel] the whole night." Detective Young stated that he observed Mr. Childree take "drug money" in the amount of about $30,000 cash to the Defendant and the Defendant's brother at about 2:00 or 3:00 a.m. Detective Young said that the Defendant and the Defendant's brother left the hotel at about 7:00 a.m. and that he apprehended the Defendant and the Defendant's brother at a Nashville airport. Detective Young stated that the Defendant and the Defendant's brother each gave a recorded statement in an airport office. Detective Young said that the Defendant and the Defendant's brother admitted they transported ten kilograms of cocaine to Mr. Childree.

Detective Young testified that about fifty search warrants were executed the following day and that thirty kilograms of cocaine, cash, and firearms were recovered during the searches. The cocaine the Defendant admitted to transporting was recovered from Mr. Childree's property. Detective Young said that the Defendant and the Defendant's brother had made about seventeen trips from Texas to Nashville since November 2013 and that the Defendant admitted transporting cocaine from Texas to Nashville about four or five times in the previous ten months. Detective Young stated that the Defendant said he had transported ten kilograms of cocaine each time and that the Defendant had transported about forty or fifty kilograms of cocaine in the previous year.

Detective Young testified that the drug task force uncovered a "large" drug trafficking organization, that a second drug trafficking organization was later discovered, and that searches related to both organizations resulted in the seizure of 100 kilograms of cocaine, $1.8 million cash, and "assets, houses, and . . . weapons." Detective Young stated that the drug trafficking organizations greatly impacted the community and that more than eighty people were indicted in connection with the organizations. Detective Young said the investigation showed that cocaine was transported from Mexico to Texas

to Nashville and that the delivery of the cocaine in Nashville from Texas was "directly attributed" to the Defendant and the Defendant's brother.

On cross-examination, Detective Young testified that the Defendant was not connected with the second drug trafficking organization. Detective Young said that he read the Defendant his *Miranda* rights before questioning him and that the Defendant was cooperative.

The Defendant testified that he was arrested on December 10, 2014, and that he was incarcerated until his family paid a cash bond in April 2016. The Defendant stated that he lived in Texas with his family and worked at his family's "transmission shop." The Defendant said that his girlfriend was four months' pregnant and that he did not have any other children. The Defendant stated that while incarcerated, he attended church services and did not commit any disciplinary infractions. The Defendant said that since his release, he had not received new criminal charges. The Defendant said that he pleaded guilty in Texas to aggravated assault in July 2017, that the offense occurred in 2012, that he was currently serving five years' probation relative to this conviction, and that he had not violated probation.

The Defendant testified that Detective Young's testimony was an accurate summary of his involvement in the drug trafficking organization and that he needed money to support his family. The Defendant stated that he received the cocaine in Texas and that he transported it to Nashville. The Defendant said that he typically earned $200 or $300 per week at the transmission shop, that he was paid about $3000 for each trip to Nashville, that he paid bills with the money, and that he did not know the identity of the cocaine "supplier" in Texas. The Defendant said that the suppliers knew of his arrest because they did not receive payment for the cocaine and that the money he possessed when he was arrested belonged to the suppliers. The Defendant testified that his brother was the "point person" and that he helped his brother transport the cocaine. The Defendant stated that he did not profit financially from transporting cocaine, that he never purchased expensive items with the money, and that he still had unpaid bills.

On cross-examination, the Defendant testified that he began working at the transmission shop at age eleven and that he had worked there since his release from jail. The Defendant stated that he was released on bond for aggravated assault when he committed the current offenses and that he had prior convictions for three drug-related offenses and for filing a false report. The Defendant denied using alcohol or drugs.

The trial court determined that the Defendant was not eligible for split confinement. Relative to the Defendant's criminal history, the court found that the Defendant had three prior convictions for drug-related offenses and that the Defendant committed the current offenses while released on bond for aggravated assault. The court noted that incarceration would serve as a deterrent for future criminal activity for the

Defendant and for others who may commit similar offenses. The court determined that the Defendant was acting as a "mule" by transporting cocaine, that the Defendant had transported "[twenty], [thirty], or [forty] kilos of cocaine to Nashville," and that he had transported the cocaine in exchange for money. The court found that incarceration was appropriate based on the nature of the offenses, the Defendant's criminal history, and the quantity of cocaine the Defendant transported. The court sentenced the Defendant, pursuant to the plea agreement, to an effective ten years and ordered him to serve his sentence in confinement. This appeal followed.

The Defendant contends that the trial court erred by denying alternative sentencing. The Defendant argues that the court failed to consider the purposes and principles of the 1989 Sentencing Reform Act. He asserts that that the court failed to address the Defendant's amenability for rehabilitation and argues that he was a "good candidate" for alternative sentencing because he accepted responsibility for the offenses and had legitimate employment. The Defendant argues that he has not committed a "most severe offense[]" as warranted by Tennessee Code Annotated section 40-35-102(5) (2014) (amended 2015), and that the court failed to explain adequately how his being incarcerated would serve as a deterrent to others. The State responds that this issue is waived on appeal because the Defendant failed to include a copy of the guilty plea transcript. In the alternative, the State argues that the court did not abuse its discretion during sentencing.

As a preliminary matter, the State correctly notes that the guilty plea hearing transcript is not included in the record. The Defendant has the burden of preparing a fair, accurate, and complete account of what transpired in the trial court relative to the issues raised on appeal. *See, e.g.*, *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983). However, our supreme court has held that "when a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review under the standard adopted in *Bise*." *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012). We conclude that the record is sufficient for a meaningful appellate review of the court's determinations because of the extensive testimony from Detective Young and the Defendant about the conspiracy.

The standard of review for questions related to probation or any other alternative sentence is an abuse of discretion with a presumption of reasonableness. *Caudle*, 388 S.W.3d at 278-79; *see State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). Generally, probation is available to a defendant sentenced to ten years or less. T.C.A. § 40-35-303(a) (2014). The burden of establishing suitability for probation rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim.

App. 1990)); *see* T.C.A. § 40-35-303(b); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

A sentence is based upon "the nature of the offense and the totality of the circumstances," including a defendant's background. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *see State v. Trotter*, 201 S.W.3d 651, 653 (Tenn. 2006). A trial court is permitted to sentence a defendant who otherwise qualifies for probation or alternative sentencing to incarceration when:

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C) (2014); *see Trotter*, 201 S.W.3d at 654.

Likewise, a trial court's application of enhancement and mitigating factors is reviewed for an abuse of discretion with "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 706-07. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed . . . within the appropriate range" will be upheld on appeal. *Id.*

The record reflects that the trial court considered the purposes and principles of sentencing. The court determined that incarceration was appropriate based on the seriousness of the offense, the Defendant's criminal history, and the quantity of cocaine the Defendant transported. The record supports the court's determination that the Defendant was previously convicted of three drug-related offenses and aggravated assault. The court found that the Defendant committed serious offenses based upon the amount of cocaine the Defendant transported and that he was paid money in exchange for his transporting the cocaine, which the Defendant admitted. The court also determined that incarceration would serve as a deterrent to the Defendant and to others who may commit similar offenses and that the Defendant had a high likelihood of reoffending. Although the court did not explicitly address the Defendant's amenability to rehabilitation, the court found, based upon the Defendant's testimony and the presentence

-5-

report, that the Defendant committed the current offenses while released on bond for aggravated assault. The court reasoned that committing these offenses while released on bond for aggravated assault was a "negative" against the Defendant. We conclude that the record supports the court's determinations and that the court did not abuse its discretion in ordering the Defendant to serve his sentences in confinement. *Caudle*, 388 S.W.3d at 278-79. The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE