IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 11, 2025

## STATE OF TENNESSEE v. SERGEI ALEKSANDROVICH NOVIKOV

**Appeal from the Criminal Court for Davidson County**
**No. 2021-D-2052     Angelita Blackshear Dalton, Judge**
_____

**No. M2024-00454-CCA-R3-CD**
_____

The Defendant, Sergei Aleksandrovich Novikov, was convicted by a Davidson County Criminal Court jury of attempted second degree murder, a Class B felony, and aggravated assault, a Class C felony.  The trial court merged the aggravated assault conviction into the attempted second degree murder conviction and sentenced the Defendant as a Range I, standard offender to ten years in the Tennessee Department of Correction.  On appeal, the Defendant challenges the sufficiency of the evidence and argues that the trial court erred in ordering a sentence of confinement without making proper findings that the Defendant was not entitled to alternative sentencing.  Based on our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and KYLE A. HIXSON, J., joined.

Nathan Cate, Nashville, Tennessee (on appeal and at trial), for the appellant, Sergei Aleksandrovich Novikov.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Simone Marshall and Matthew Thomas, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

# FACTS

This case arises out of the Defendant's shooting and seriously injuring his employer, Jeffery Moody, the owner of the construction company for which the Defendant worked as a laborer on the grading crew. According to the State's proof at trial, on the morning of February 27, 2021, some of the construction company employees noticed the Defendant coming out of a newly constructed house in the Antioch subdivision that they were developing. Monty Perry, foreman of one of the utility crews, told the Defendant that he should not be in the house and overheard other employees telling the Defendant that the victim would make him get out, along with the Defendant's reply that it was his home and he "w[ould] show [the victim]." Joshua Hendon, superintendent of the utility crews, also told the Defendant that he could not be in the house and to get his belongings out, but the Defendant ignored Mr. Hendon. Consequently, Mr. Hendon called the victim to tell him the Defendant was "squatting" in the home, and that the victim needed to handle the situation.

When the victim arrived, he noticed that the front door latch of the house was broken. He entered, encountered the Defendant coming out of a downstairs bathroom, and told him that he was not supposed to be there. The Defendant acknowledged he knew he should not be in the house. The victim told him to gather his belongings and that they needed to clean up the house. The Defendant went upstairs, and the victim began collecting trash from the kitchen. The victim then went upstairs to check for possible damage, saw the Defendant gathering his toiletries from the master bathroom, and went back downstairs with the intention of cleaning the living room. At that point, the victim noticed a handgun lying on the kitchen counter, ejected the clip, and started to remove the bullets. The victim then heard the Defendant's footsteps coming down the stairs. Not wanting the Defendant to be angry that he had touched his belongings, the victim replaced the clip, laid the gun down, and turned to look out the sliding glass door. When he turned back around, the Defendant was pointing the nine-millimeter handgun at him.

Before the victim could react, the Defendant fired one shot that struck the victim in the upper mid abdomen and exited the victim's back to shatter the glass door behind him. As the victim lay on the floor, he looked up to see the Defendant still pointing the gun at him as he looked directly at him. The Defendant had a look on his face that frightened the victim because it made him believe that the Defendant's shot had not been accidental, and that the Defendant intended to shoot him again. The victim quickly rolled over, crawled across the broken glass to exit the house, stood, and sprinted to a shipping container, where he hid while he called Mr. Hendon to tell him what had happened. He then opened the door to the shipping container and, not seeing the Defendant, ran to hide in a deep drainage ditch next to a tree line.

Upon receipt of the victim's phone call, Mr. Hendon called 911, instructed some employees to keep an eye on the Defendant, and searched for and located the victim. As he was rendering medical aid to the victim, he overheard the Defendant say that he had "got that MF-er," using the words "[m]***** f*****" instead of "MF." The victim was transported by ambulance to Vanderbilt Hospital, where he underwent surgeries to resection his small bowel and to repair his damaged ureter. The Defendant admitted in an interview at the police station later that same morning that he had shot the victim but said that the home was his and he was defending his way of life.

The Defendant was indicted by the Davidson County Grand Jury with attempted first degree premeditated murder, aggravated assault, possession of a weapon after having been convicted of a misdemeanor crime of domestic violence, vandalism, and criminal trespass. The State later nolle prosequied the vandalism and criminal trespass counts, and the Defendant pled guilty to the possession of a weapon count, leaving him to proceed to a September 2023 jury trial on the attempted first degree premeditated murder and aggravated assault counts of the indictment.

At the conclusion of the trial, the jury convicted the Defendant of the lesser-included offense of attempted second degree murder and of the indicted offense of aggravated assault. The trial court merged the aggravated assault conviction into the attempted second degree murder conviction and sentenced the Defendant as a Range I, standard offender to ten years in the Tennessee Department of Correction. Following the denial of his motion for a new trial, the Defendant filed a timely notice of appeal to this court in which he raises the following issues, stated in his brief as follows: (1) "[t]he evidence was insufficient to support the verdict"; and (2) "[t]he Court erred by sentencing [the Defendant] to serve his sentence . . . without making the appropriate findings on the record."

## ANALYSIS

### I. Sufficiency of the Evidence

As his first issue, the Defendant contends that "[t]he proof in this case was insufficient to establish beyond a reasonable doubt that the Defendant committed [a]ttempted [s]econ[d] [d]egree [m]urder." The State argues that the Defendant has waived appellate review of this issue for failure to make any argument or citations to the record. We agree. The argument section of the Defendant's brief contains nothing other than a short recitation of the standard of review for sufficiency of the evidence issues and a bare assertion that the evidence was insufficient to sustain the conviction beyond a reasonable doubt. A defendant who fails to make an argument on an issue or appropriate citations to the record waives the issue on appellate review. *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct.

Crim. App. R. 10(b). We, therefore, conclude that the defendant has waived this issue on appeal.

## II. Sentencing

The Defendant contends that the trial court erred in denying alternative sentencing based on an inappropriate application of the factors in Tennessee Code Annotated section 40-35-103. He asserts that he did not have a lengthy criminal history, and that the record does not support the trial court's finding that measures less restrictive than confinement have frequently been unsuccessfully applied to him in the past. He also points out that the trial court found that a sentence of confinement would not act as a deterrence to others under the circumstances of the case. The State argues that the sentence should be affirmed because the trial court considered the relevant principles of sentencing, and the Defendant failed to meet his burden of showing that he was a favorable candidate for alternative sentencing.

This court reviews the length, range, and manner of service imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012); *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the standard to alternative sentencing).

A defendant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. *See* Tenn. Code Ann. § 40-35-303(a). The following sentencing considerations in Tennessee Code Annotated section 40-35-103(1) should be used to determine whether alternative sentencing is appropriate:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Additionally, a court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. *See id.* § 40-35-103(5).

The burden is on the defendant to demonstrate suitability for full probation. *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017). In evaluating the suitability of probation, the trial court should consider: "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *Id.* A trial court's decision to grant or deny probation is reviewed under an abuse of discretion standard with a presumption of reasonableness when the sentence reflects the purposes and principles of sentencing. *Caudle*, 388 S.W.3d at 278-79. "[A] trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (order) (per curiam).

At the January 5, 2024 sentencing hearing, the State introduced a number of exhibits, including: the Defendant's presentence report, which reflected that the thirty-eight-year-old Defendant had prior misdemeanor convictions ranging from 2013 convictions for vandalism, domestic assault, and violation of a protective order to two 2016 convictions for assault[1]; the Defendant's NCIC history, which reflected a number of offenses, including a DUI, trespassing, and three failures to appear, all of which were either dismissed or no disposition listed; the Defendant's Tennessee Department of Safety official driving record, which reflected the Defendant's lengthy history of driving violations; certified copies of the Defendant's judgments for his convictions for assault and violation of an order of protection; and a copy of some of the victim's hospital admittance records that reflected the injuries the victim sustained in the shooting.

In an allocution to the court, the Defendant apologized to the victim, stating that he "kind of over-reacted" and that it was "like an instinct thing, pretty much."

Defense counsel asserted that the proof showed that the Defendant was operating under the mistaken and "ludicrous" belief that he owned the home and proposed as applicable mitigating factors that the Defendant's actions were motivated by his desire to provide himself with the necessity of shelter and that his unstable mental state reduced his culpability for the offense. *See* Tenn. Code Ann. § 40-35-113 (7), (8). Defense counsel also pointed out that the Defendant had no felony convictions and had never received felony probation, had a limited history of misdemeanor convictions, and had a college degree and was steadily employed. Defense counsel, therefore, requested that the trial court sentence the Defendant to eight years of probation, suggesting that the trial court order intensive probation with the Defendant required to seek the mental health treatment and rehabilitation "he clearly needed."

---

[1] The presentence report reflects a disposition date of "7/16/2018" for one of the assaults. However, it appears to be a typographical error, with the correct date of the conviction "7/18/2016."

The trial court began its ruling by noting that it had reviewed the presentence report, recalled the evidence from the trial, and considered the principles of sentencing. It then found that the Defendant's two proposed mitigating factors were applicable but entitled to only slight weight, but that the applicable enhancement factor of the Defendant's history of criminal behavior and convictions was entitled to great weight. *See* Tenn. Code Ann. § 40-35-114(1). The trial court recognized that the Defendant had no felony convictions and that his most recent misdemeanor conviction occurred nine years before the incident in the instant case. The trial court expressed great concern, however, with the Defendant's having escalated from committing acts involving "some level of violence[,]" as evidenced by his domestic assault and violation of an order of protection convictions, to "shooting somebody" without justification. The trial court, therefore, concluded that a ten-year sentence was appropriate.

The trial court then turned to a consideration of the manner of service of the sentence. The trial court's ruling states in pertinent part:

> Obviously, [the Defendant] has a criminal history that is concerning to the Court. Albeit it's not a long history. I have already discussed the Court's concern with his history and the fact that he's progressed from domestic violence related - -misdemeanor domestic violence related offenses to shooting somebody. That is quite concerning, so I definitely think that under 40-35-103, factor (A) applies.

> Under factor (B), necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide the effective deterrence to others likely to commit a similar offense, obviously, I don't think that any sentence that the Court could render in this case could, I guess, stress the level of appreciation for the seriousness of the offense.

> But with that said, the question, I guess, then becomes, is this something that is suited to deter others? Obviously, deterrence is a factor in the Court's consideration in every sentencing circumstance.

> In this case, I do think that that applies, but I do give that limited weight and, primarily, because I get that [the Defendant] - - although I don't think that there was anything to substantiate it, I do think that he probably was not thinking clearly. Why he wasn't, I don't know.

> Then factor (C) definitely applies; measures less restrictive than confinement have frequently or recently - - probably frequently, not necessarily recently been applied unsuccessfully.

As I've noted, [the Defendant] has a history of convictions, one of which resulted in a revocation of his probation, so he's definitely not been successful while on probation.

So I think that all things considered, especially when I look at the nature of this offense, [the Defendant's] record, and what I've described as the progression, I think the 10-year sentence to serve under these circumstances is what is appropriate, and that is the judgment of the Court.

We agree with the State that the trial court was within its broad discretion in ordering a sentence of full confinement. The trial court's ruling on this issue was not a model of clarity, and the record may not support the trial court's findings that measures less restrictive than confinement have frequently been unsuccessfully applied to the Defendant or that the Defendant has a long history of criminal conduct. However, the trial court's finding that confinement was necessary to avoid depreciating the seriousness of the offense is well supported by the record. The victim testified at trial that he was calm in his encounter with the Defendant, that he did not threaten him, and that he did nothing to provoke him. He said that he tried to help his employees, was aware that the Defendant had experienced homelessness in the past, and intended, if no serious damage to the house was found, to take the Defendant to a motel and pay for a room for him. The victim also testified that he replaced the gun as he had found it and turned his back to look out the glass door to avoid angering the Defendant and escalating the situation. When the victim turned back around, the Defendant shot him without any provocation or warning. Moreover, although the jury acquitted the Defendant of attempted first degree premediated murder, there was evidence in the record, when viewed in the light most favorable to the State, to show that the Defendant premediated the shooting. We, therefore, affirm the sentence imposed by the trial court.

## CONCLUSION

Based on our review, we affirm the judgments of the trial court.

s/ JOHN W. CAMPBELL
JOHN W. CAMPBELL, SR., JUDGE