IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 2, 2026

**STATE OF TENNESSEE v. JOSHUA CORTEZ MOTEN**

**Appeal from the Circuit Court for Madison County**
**No. 23-526    Kyle C. Atkins, Judge**

_____

**No. W2025-00840-CCA-R3-CD**

_____

The Defendant, Joshua Cortez Moten, was convicted by a Madison County Circuit Court jury of possession of a firearm by a convicted felon, a Class B felony; evading arrest in a motor vehicle, a Class D felony; and possession of ANPP, a Schedule II controlled substance, a Class A misdemeanor, and was sentenced by the trial court to an effective term of nine years at 85% in the Tennessee Department of Correction.  On appeal, the Defendant argues that the trial court abused its discretion by denying alternative sentencing.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JILL BARTEE AYERS, JJ., joined.

Raven Prean-Morris, Assistant Public Defender—Appellate Division, Frankin, Tennessee (on appeal); Marcus Lipham, Jackson, Tennessee (at trial); John D. Hamilton, Assistant Public Defender, Jackson, Tennessee (at motion for new trial); for the appellant, Joshua Cortez Moten.

Jonathan Skrmetti, Attorney General and Reporter; Park Huff and Courtney Orr, Assistant Attorneys General; Jody S. Pickens, District Attorney General; and Justin Prescott, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On the night of November 7, 2022, Jackson Police Department Officer Ryan Brisco initiated a traffic stop of the Defendant based on the Defendant's driving on a revoked

license and having an active felony warrant out of Shelby County. Instead of pulling over, the Defendant led the officer on a high-speed chase down Highway 18 in Madison County, with Officer Brisco reaching speeds of over 120 miles per hour in a 55-mile-per-hour zone during the pursuit, and the Defendant at times driving in the opposing lane of traffic. The Defendant briefly left the roadway when he turned onto Pope Road but then regained control of his vehicle and continued to his residence, where he stopped in his driveway. From that point on, the Defendant was compliant with the officer's commands. A search of the Defendant's vehicle and person uncovered a loaded handgun in the center console, marijuana in a backpack on the rear passenger floorboard behind the driver's seat, and a pill in the Defendant's pocket that tested positive for ANPP, a Schedule II controlled substance.

The Defendant was indicted for possession of a firearm by a convicted felon, evading arrest in a motor vehicle creating a risk of death or injury to a third party, possession of a Schedule II controlled substance, and driving on a canceled, suspended or revoked license. The State nolle prosequied the driving on a canceled, suspended or revoked license charge, and the Defendant proceeded to a jury trial on the first three counts of the indictment. At trial, the Defendant's brother claimed ownership of the gun and the marijuana, testifying that he had borrowed the Defendant's vehicle and left those items inside it. The Defendant elected not to testify in his own defense. Following deliberations, the jury convicted the Defendant of all three counts as charged in the indictment.

At the September 2024 sentencing hearing, the State introduced the Defendant's presentence report, which reflected that the thirty-two-year-old Defendant had 2017 convictions in Shelby County Criminal Court for reckless endangerment with a deadly weapon and aggravated assault, which were based on offenses committed in June 2015 and December 2014, respectively. The presentence report further reflected that the Defendant had a pending charge of aggravated rape in Shelby County with an offense date of November 7, 2021.

The presentence report reflected that the Defendant was unmarried, had five children ranging from the age of three to ten who lived with their respective mothers, was not court-ordered to pay any child support, and had been in a five-year relationship with his fiancée, with whom he lived at the time of his arrest in the instant case. The Defendant had graduated high school and completed a Tennessee College of Applied Technology welding program and was working two jobs at the time of his arrest: as a manual laborer at U-Haul, and as a welder at Rite Hite. The Defendant reported that he would be able to return to both jobs if released from custody.

The Defendant reported his physical health as good and denied any mental health concerns or diagnoses or drug or alcohol problems. He reported that he smoked marijuana

occasionally but had not used it in the past three years and should be able to pass a drug screen. The Defendant's validated risk and needs assessment resulted in an overall risk level of low with no high or moderate needs. The validated risk and needs assessment also included information that the Defendant had, during his lifetime: displayed threatening, aggressive, or violent behaviors; committed stalking, harassment, or intimidation; committed a physical assault of an adult; and injured someone with a weapon.

The State argued that the Defendant qualified as a Range I offender for his Class B felony conviction in count one and as a Range II offender for his Class D felony conviction in count two and proposed that the following enhancement factors were applicable to one or more of the offenses: the Defendant's history of criminal convictions or criminal behavior in addition to those necessary to establish his range; that the Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community; that the Defendant possessed a firearm during the commission of the offense; and that the Defendant had no hesitation about committing an offense when the risk to human life was high. *See* Tenn. Code Ann. § 40-35-114 (1), (8), (9), and (10). The State based the enhancement factor of the Defendant's failure to comply with the conditions of a sentence involving release into the community on its belief that the Defendant "at some point . . . was granted diversion and then maybe probation, and then subsequently sentenced to serve a seven-year sentence on [the 2017 convictions]."

The State argued that the Defendant was "probably subject to consecutive sentencing on the two felonies" but requested that, if the trial court opted against consecutive sentences, the Defendant be sentenced to concurrent terms of twelve and five years, respectively. The Defendant pointed out that he scored a low risk to reoffend on his validated risk and needs assessment and requested that the trial court impose concurrent sentences at the bottom of the range for each of the felony convictions.

At the conclusion of the hearing, the trial court found that the Defendant was a Range I offender for count one and a Range II offender for count two and applied a single enhancement factor to both convictions: the Defendant's history of criminal convictions or criminal behavior in addition to those necessary to establish his range. The trial court found no applicable mitigation factors and that consecutive sentencing did not apply. The trial court, therefore, sentenced the Defendant to concurrent terms of nine years at 85% as a Range I offender for count one, five years at 35% as a Range II offender for count two, and 11 months, twenty-nine days at 75% for count three.

With respect to the manner of service, the trial court noted that the Defendant was eligible for probation and that he scored "low on everything" on his risk and needs assessment. The trial court found, however, that the facts and circumstances of the criminal conduct involved in the instant case, the Defendant's prior criminal history, the

Defendant's "one prior probation violation," and the Defendant's pending rape case all weighed against probation. Specifically, in addressing whether the Defendant "might reasonably be expected to rehabilitate[,]" the trial court noted not only that the Defendant had prior felony convictions, but also that he committed the instant offenses when his aggravated rape charge "had not made it to the grand jury, which would indicate he probably is likely to reoffend." The trial court again noted the prior probation violation when considering whether the Defendant would abide by the terms of his probation. Finally, the trial court found that the interest of society in being protected from the Defendant's future criminal conduct was great, that measures less restrictive than confinement had been applied unsuccessfully to the Defendant, as evidenced by the fact that he "had two prior cases" and was "still committing crimes[,]" and that a sentence of probation would unduly depreciate the seriousness of the offense.

The judgments were entered on September 19, 2024. The Defendant, through his retained counsel, filed a motion for new trial one day late, on October 22, 2024. There is no order in the record relieving retained counsel of representation but on February 18, 2025, the trial court entered an order appointing the public defender's office to represent the Defendant. On May 1, 2025, appointed counsel filed an amended motion for new trial arguing that the trial court erred in denying an alternative sentence and in relying on facts that were "mistakenly argued" by the State at the sentencing hearing. After a hearing, the trial court overruled the motion for new trial by an order entered on May 27, 2025. The Defendant filed a notice of appeal to this court on June 4, 2025. The Defendant also filed a motion requesting that we waive the timely notice of appeal requirement in the interest of justice.

## ANALYSIS

As an initial matter, we must address the Defendant's request that we waive the timely notice of appeal requirement in the interest of justice. In his motion requesting that we accept his late-filed appeal, the Defendant cites the fact that the original motion for new trial was only one day late, that his retained counsel who filed the untimely motion for new trial was suspended from the practice of law approximately one month after the motion for new trial was filed[1], and that neither the trial court nor appointed counsel realized that the motion for new trial was untimely and the trial court without jurisdiction to hear it.

There is no question that the motion for new trial was untimely, as was the notice of appeal. A motion for new trial "shall be made . . . within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). The thirty-day filing period may not be

---

[1] The Board of Professional Responsibility's website reflects that retained counsel was subsequently permanently disbarred.

extended by the trial court, *see id.* 45(b)(3), and the trial court's "erroneous consideration [and] ruling on a motion for new trial not timely filed [will not] validate the motion." *State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997) (citation omitted). Because the trial court lacked jurisdiction to consider the untimely filed motion for new trial, the Defendant had thirty days from the entry of the judgments to file his notice of appeal to this court. *See* Tenn. R. App. P. 4(a).

A notice of appeal is not, however, jurisdictional, and the requirement for a timely notice of appeal may be waived in the interest of justice. *See id.* In determining whether waiver is appropriate, "this [C]ourt will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case." *State v. Rockwell*, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007). Also relevant is whether the appellant requests waiver of the timely notice of appeal requirement. *Id.* After considering the *Rockwell* factors, we conclude that the interest of justice warrants waiver of the timely notice of appeal requirement under the circumstances present in this case.

The Defendant contends that the trial court abused its discretion in sentencing him to confinement instead of an alternative sentence, arguing that the trial court based its decision on the clearly erroneous assertion by the State that the Defendant had a prior probation violation. The State argues that the trial court complied with the procedures and principles of sentencing and that it acted within its discretion when it denied an alternative sentence. We agree with the State.

This court reviews the length, range, and manner of service of a sentence imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012); *see State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the *Bise* standard to alternative sentencing). In determining the defendant's sentence, the trial court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the defendant in his own behalf; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* Tenn. Code Ann. § 40-35-210(b); *see also Bise*, 380 S.W.3d at 697-98. The trial court also must consider the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-103(5). The burden is on the Defendant to demonstrate the impropriety of his sentence. *See* Tenn. Code Ann. § 40-35-401, Sent'g Comm'n Cmts.

The purpose of the Sentencing Reform Act is "to promote justice" and ensure that "[e]very defendant shall be punished by the imposition of a sentence justly deserved in relation to the seriousness of the offense[.]" Tenn. Code Ann. § 40-35-102(1). The sentence imposed "should be no greater than that deserved for the offense committed" and "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]" Tenn. Code Ann. § 40-35-103(2), (4).

In determining if incarceration is appropriate, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

The burden is on the defendant to demonstrate suitability for full probation. *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017). In evaluating the suitability of probation, the trial court should consider: "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *Id.*

We agree with the State that the trial court acted within its discretion in ordering a sentence of confinement. The record reflects that the trial court considered the purposes and principles of sentencing and articulated on the record its reasons for denying probation or other alternative sentencing. Although the trial court may have been mistaken in its finding that the Defendant had violated his probation in a past case, that factor was but one of several that the trial court relied on for its ruling. The trial court also relied on the circumstances of the offense, the Defendant's history of violent offenses, the Defendant's continuing criminal behavior, and the need for confinement to avoid depreciating the seriousness of the Defendant's offenses.

The record supports those findings. At the outset, we note that, as a Range I offender convicted of a Class B felony in count one and as a Range II offender in count two, the Defendant was not presumed to be a favorable candidate for an alternative sentence, s*ee* Tenn. Code Ann. § 40-35-102(6)(A), and that retained counsel did not argue for an alternative sentence. Furthermore, the record shows that the Defendant had a pattern of escalating criminal behavior. According to the judgment forms, the Defendant was arrested on June 8 or 9, 2015 for the June 8, 2015 reckless endangerment with a deadly weapon offense. On December 10, 2015, he was arrested for the December 9, 2014 aggravated assault offense. He was convicted of both offenses on March 24, 2017, and sentenced to an effective term of seven years at 30% in the Tennessee Department of Correction. Sometime before he committed the instant offenses, a warrant was issued for the Defendant's arrest based on the alleged November 7, 2021 aggravated rape. On November 7, 2022, the Defendant was arrested for the instant offenses after leading a police officer on a high-speed chase during a time when his license was revoked. He also had a loaded handgun in the console of his vehicle, marijuana in a backpack on the back floorboard, and a Schedule II controlled substance in his pocket. These facts show the Defendant's disregard for the law and continuing pattern of violent offenses, which demonstrate his poor potential for rehabilitation and a need for confinement to avoid depreciating the seriousness of the offenses. We, therefore, affirm the sentence of confinement imposed by the trial court.

## CONCLUSION

Based on our review, we affirm the judgments of the trial court.

s/ JOHN W. CAMPBELL
JOHN W. CAMPBELL, SR., JUDGE